[Civ. No. 2168. Third Appellate District.—June 2, 1920.]

JOSEPHINE P. BOYD, Respondent, v. BYRON A. BEARCE, Appellant.

[1] PROMISSORY NOTE — ACTION ON — ACQUISITION BY THIRD PERSON THROUGH FRAUD—PAYMENT BY MAKER—DUTY TO MAKE INQUIRY— NOTICE—EVIDENCE—FINDINGS.—In this action upon a promissory note, the testimony of plaintiff and her husband, or of either, was sufficient to sustain the findings of the trial court that the third person from whom defendant, maker of the note, secured the note by the payment of less than its face value fraudulently obtained possession of said note from plaintiff, that said third person never

had title to said note and never had right of possession thereof, and never had the right or authority to transfer or dispose of or collect said note or any part thereof, and that, while defendant did not have actual knowledge of the circumstances under which said third person came into possession of said note, he had sufficient information to put a reasonable person upon inquiry and such inquiry, if made, would have disclosed the fact that said third person had obtained possession of the note through fraudulent representations.

[2] ID.—PURCHASE OF NON-NEGOTIABLE INSTRUMENT—NOTICE OF INFIRMITY—DUTY TO MAKE INQUIRY.—Where a promissory note has a provision for acceleration of the time of payment of the principal if any installment of interest is not paid and is, therefore, non-negotiable, any subsequent purchaser or holder is held to a stricter accountability as to notice of any infirmity in the title of one transferring it than in case of a negotiable instrument.

[3] ID.—GOOD FAITH—INADEQUACY OF CONSIDERATION—OFFER OF THIRD PERSON TO SELL FOR LESS THAN VALUE—DUTY TO MAKE INQUIRY OF PAYEE.—While inadequacy of consideration is not conclusive, it is a circumstance to be considered in determining the question of good faith; and the fact that a .third person offers to sell to the maker the latter's non-negotiable promissory note for less than one-half its face value, when the maker is not insolvent but is financially able to pay the full amount due, is sufficient to put him on inquiry of the payee as to why such third person makes such concession and under what circumstances he came into possession of the instrument.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur L. Levinsky and Clarence E. Fleming for Appellant.

Harris & Hayhurst and C. W. Miller for Respondent.

BURNETT, J.—The appeal is from the judgment rendered in favor of plaintiff by the superior court of San Joaquin County. The defendant Bearce was indebted to plaintiff in the sum of $2,958.68, evidenced by his promis-

2. Provision accelerating maturity of bills and notes as affecting negotiability, notes, 35 **L. R. A. (N. S.)** 390; **L. R. A.** 1915B, 472.

sory note in that amount, dated April 22, 1916, bearing interest at the rate of seven per cent per annum. Said note required the "interest to be paid annually, and if not so paid as it becomes due, to bear interest at the same rate as said principal sum, but if default be made in the payment of interest, then the principal sum of this note shall immediately become due at the option of the holder hereof." The first year's interest on the note was not paid and plaintiff's attorneys wrote to defendant Bearce on May 11, 1917, demanding payment of the interest, and again on May 18th following, notifying said defendant that the plaintiff elected to declare the whole of said note due, and demanding payment of the sum. On May 22, 1917, defendant wrote to said attorneys that he had paid the note in full, having purchased the same from the defendant M. P. Fries on or about the eighteenth day of May, 1917. About the fifteenth day of May, 1917, defendant Fries called upon plaintiff for the purpose of inducing her to let him have the Bearce note for collection. After some conversation Mrs. Boyd delivered the note to Fries and he in return gave her his note for $1,600, and for security gave her 3,200 shares of the capital stock of Shasta National Copper Company and an agreement in writing as follows:

"Fresno, Calif., May 15, 1917.

"Mrs. Josephine P. Boyd,

"Fresno, Calif.

"Dear Madam: In addition to the secured note given you this date, I hereby promise and agree to pay all money collected on the Byron A. Bearce note given me this day, over and above the sum of $1,600.

"M. P. Fries."

On May 15th Fries at Fresno called Mr. Bearce at Stockton by telephone and asked him what he would pay for the Boyd note. Mr. Bearce finally agreed to pay fifty cents on the dollar and wired Fries to that effect. Several days later Fries came to Stockton with the note and Mr. Bearce, according to his testimony, on seeing that the same was properly indorsed, gave Fries a check for $1,350 and credited him with $250 on account of money which Fries at that time owed to Mr. Bearce. On November 6, 1917, Fries sent Mrs. Boyd a check for fifty-six dollars in payment of the sum semi-annually due on his note for $1,600. This

check was received by Mrs. Boyd and delivered to her attorney, Judge Harris, who on November 7th returned the same to Mr. Fries with the statement that Mrs. Boyd had not accepted Fries' note. About six months later Fries sent another check to Mrs. Boyd for $112 covering the first year's interest on his note for $1,600, and this was likewise returned to Fries. Thereafter Mrs. Boyd brought suit against Bearce for the full amount of the note, and the court gave her judgment for said full amount, together with $300 attorneys' fees. Fries was never served and did not appear at the trial. [1] Plaintiff claimed in her complaint that Fries fraudulently obtained possession of said note and that defendant Bearce paid no consideration for it, and that at the time it was delivered to him he was familiar with the facts constituting the fraud consummated by Fries and that said defendant Bearce was not a purchaser in good faith. The court found that the fraud was perpetrated by Fries as alleged in the complaint, and, furthermore, as to Bearce, that it is not true that he paid no consideration for said note ''and that it is not true that at the time it was delivered to said defendant Bearce he knew of the facts and circumstances of the loaning of said note to said defendant Fries by plaintiff, or the manner in which said defendant Fries came into the possession thereof, or that the plaintiff was the owner of said note, or entitled to the possession thereof and in that behalf the court finds that the defendant Bearce paid for said note the sum of $1,350 and no more and gave said defendant Fries in addition to said sum a credit for $250 and no more; that while defendant Bearce did not have actual knowledge of the facts and circumstances of said note as aforesaid and the manner in which said defendant Fries came into possession thereof, said defendant Bearce had sufficient information to put a reasonable person upon inquiry and such inquiry would have disclosed the fact that said Fries got possession of said note through fraudulent representations; that said note was not indorsed by said plaintiff; that said Fries never had title to said note and never had right of possession thereof, and never had the right or authority to transfer or dispose of or to collect said note or any part thereof.''

48 Cal. App.—4

As to the first of these considerations it may be said that the finding of the court is abundantly supported. The testimony of plaintiff and her husband, or of either, is sufficient for that purpose. It may be admitted that the transaction as detailed by plaintiff presents a somewhat peculiar aspect, but her account is not inherently improbable, and we cannot say that the lower court was not justified in believing her. The trial judge, of course, had the advantages that go with a personal contact with the witnesses, and having been convinced that plaintiff was ''an elderly woman, unskilled in the ways of the world, and apparently an easy prey,'' he had no difficulty in reconciling her eccentric conduct with the theory of her veracity and entire innocence of any wrongdoing. Indeed, the sufficiency of the showing as to this first branch of the case does not seem to be seriously disputed.

. The other question is more worthy of careful consideration.

[2] In viewing it, the trial judge in the first place had regard to the fact that the note, having a provision for acceleration of the time of payment of the principal if any installment of interest was not paid, was non-negotiable. (*Wetzel v. Cale*, 175 Cal. 208, [165 Pac. 692].) Therefore, under the decisions, any subsequent purchaser or holder is held to a stricter accountability as to notice of any infirmity in the title of the one transferring it than in case of a negotiable instrument. This circumstance is of some moment in testing the sufficiency of the showing made to justify the court's conclusion that appellant was not an innocent purchaser.

[3] One fact, to which great significance was attached, is that appellant paid only about forty-two cents on the dollar for his note. There is no evidence that he was insolvent or unable to pay the full amount due, and the circumstance that he was thus permitted to purchase it at such a discount would naturally excite the suspicions of an honest man, and should have led to an inquiry as to the circumstances under which Fries secured possession of the note. Inadequacy of consideration is, indeed, not conclusive, but the authorities generally hold that it is a circumstance proper to be considered in determining the question of good faith. It is so held in *Clark* v. *Troy*, 20 Cal. 220. The question

was carefully considered by the supreme court of Tennessee in *Oppenheimer* v. *Bank*, 97 Tenn. 19, [56 Am. St. Rep. 778, 33 L. R. A. 767, 36 S. W. 705], wherein is quoted with approval section 291 of Tiedeman on Commercial Paper, from which we make the following extract: "And it may be stated, subject to an explanation of terms, that an inadequate price always puts the person upon inquiry and may, certainly, along with other suspicious circumstances, charge him with notice of existing defenses. But every price is not inadequate which is less than the face value of the instrument purchased. Commercial paper of every kind has its commercial value, rising above or falling below par, according to the financial credit of the person liable on it. Only that price is inadequate which falls below the market value, and if the disproportion between the price paid and the market value be very great, it is fair and just to presume that the purchaser had reasonable grounds for suspecting fraud or some other defense to the instrument. Each case must, therefore, stand on its own merits. One-half the value may, under some circumstances, be a grossly inadequate price, while, under different circumstances, it may be greatly in excess of what the instrument is worth on the market." Herein, there is no direct evidence of the market value of said note, but it is fair to assume that, if appellant had been insolvent or unable to pay his debts in full, he would have made some showing to that effect. He did testify that a good deal of his paper was out, but he did not claim that he was financially embarrassed in any way. Under such circumstances, where a third party offers to sell to the maker the latter's own note for less than one-half its face value, is it not just to exact of him some inquiry as to why the vendor makes such concession and under what circumstances he came into possession of the instrument? We think the transaction would naturally excite the suspicion of the average man, and his impulse would be to make inquiry of the payee of the note. But, as far as the record shows, appellant did not even question Fries as to any of the circumstances connected with his possession or asserted ownership of the instrument. This conduct was rather singular upon the theory of the good faith of appellant.

Moreover, there are other circumstances in the case "of such a strong and pointed character as necessarily to cast a shade upon the transaction, and to put the holder on inquiry," adopting the language of Judge Story in his work on Promissory Notes, section 197.

Among these is the fact that appellant had reason to believe that Fries was impecunious. .Appellant had been compelled to sue him for a debt and had recovered judgment, but had not been able to satisfy it. At the time of this transaction Fries owed him about $1500. It also appears that Fries by his conduct in selling "Tidewater" stock had discredited himself with appellant, and it seems improbable that with this relation existing between the two, appellant should have calmly taken it for granted that Fries had become the *bona fide* holder of the note.

Again, appellant testified that Mrs. Boyd had promised him that she would not transfer the note, and two or three days before said transaction with Fries appellant received from Mrs. Boyd's attorneys a letter containing the following statements: "Mrs. Josephine T. Boyd has handed to us your note dated April 22, 1916, for the principal sum of $2,598.68, payable to her at the city of Fresno, on or before three years after date. The interest on this note fell due on April 22d of this year, but she has not received the same. She advised us that she wrote you a letter a short time before it was due, requesting payment, but that she never received any reply. Will you please send this interest to us for Mrs. Boyd."

These circumstances would naturally inspire caution in considering the proposition of a stranger to sell said note for less than fifty per cent of its face value.

· Moreover, appellant was contradicted in some material respects and, in a legal sense, this would justify the trial court in° discrediting his testimony. The fact also that he did not attempt to take the deposition of Fries in corroboration of his own testimony and his manner upon the stand as a witness may have been deemed significant by the trial judge. We mention the foregoing, not as indicative of any opinion of our own as to the credibility or good faith of appellant, but to demonstrate that the case is one falling within the familiar rule as to the province of the trial court in determining the probative force of the evidence.

It is suggested by appellant that the decision is unjust because thereby respondent secures the full payment of her note from appellant in addition to having the note of Fries for $1,600. However, the circumstances are such as to create the suspicion, if not to justify the conviction, that said note of Fries, together with the stock pledged to secure its payment, is altogether worthless. At any rate, respondent offered to surrender them to appellant and is willing to do so now.

As we view the record, we think the judgment should be affirmed, and it is so ordered.

Hart, J., and Nicol, P. J., *pro tem.,* concurred.