HERNDON, J.
 

 Appellant, the purchaser and endorsee of a promissory note, brought this action seeking to enforce collection of the note and to foreclose a lien on real property given as security therefor. The trial court sustained certain personal defénses (fraud in the inducement and failure of consideration) which were interposed by respondents, makers of the note. The determinative questions are: (1) whether appellant is a holder in due course and, as such, entitled to immunity from such personal defenses, and (2) whether there is any evidence in the record to support findings to the effect that appellant purchased the note with knowledge of the facts giving rise to the defenses which were asserted.
 

 Respondents entered into a written contract with Mission Supply, Inc., by the terms of which the latter undertook to install a water softener upon respondents’ premises. The contract recited that materials and labor were to cost $599, and provided that respondents were to make 36 monthly payments of $23.61. It also provided that respondents granted a lien on their real property to secure performance on their part. As a part of the same transaction, respondents éxeeuted the promissory note in suit, a separate instrument, by which they promised to pay Mission Supply, Inc., or order, the sum of $849.96 in 36 monthly installments of $23.61.
 

 Appellant purchased the note and contract from the payee prior to the date on which the first installment fell due, paying therefor a purchase price of $589. The note was endorsed by the payee “without recourse.” It appears that appellant purchased this paper in the ordinary course of a considerable volume of business with the payee. Appellant’s business man
 
 *695
 
 ager testified that when he purchased the contract it was his understanding and belief that the payee had fully performed its obligations under the contract.
 

 Over appellant’s objections, respondents were permitted to testify to facts, which, as we shall assume, would be sufficient to establish (as against a party other than a holder in due course) the personal defenses relied upon by respondents. This testimony was admitted subject to a motion to strike in the event that there was no evidence to establish notice or knowledge on the part of appellant. At the conclusion of respondents’ case, appellant moved to strike all of the testimony with reference to the personal defenses on the ground that there was no evidence showing, or tending to show, that appellant had knowledge of any fact which would impair his position as a holder in due course when he acquired the note. In opposing this motion to strike, respondents made no effort to point to any evidence of knowledge or bad faith on appellant’s part but rather devoted their argument to the proposition that the note was nonnegotiable by reason of the contract which accompanied and secured it. The motion to strike was taken under submission, and although the record does not affirmatively so indicate, we must assume from the tenor of the findings that it was denied.
 

 The trial court found that appellant had notice and knowledge of the facts giving rise to the personal defenses and concluded that appellant was entitled neither to recover on the note nor to enforce the contract. We have reviewed the record and find that appellant is correct in contending that there is a total absence of evidence to support the trial court’s findings to the effect that appellant purchased the instruments in question with knowledge of the defects therein. We find not even a scintilla of evidence tending to prove any fact which would impair appellant’s position as a holder in due course. Indeed, no attempt is made in respondents’ brief to support these findings; their entire argument is devoted to the proposition that the negotiability of the note was destroyed by reason of the contemporaneous and accompanying contract which was executed by the makers as a part of the same transaction. We have concluded that this proposition is untenable as a matter of law.
 

 The promissory note in the case at bar clearly meets all the formal requirements for a negotiable instrument, in that it is in writing, signed by the maker, contains an unconditional promise to pay a sum certain in money, is payable at a fixed
 
 *696
 
 or determinable future time, and is payable to order. (Civ. Code, § 3082 et seq.)
 

 Under the Negotiable Instruments Law, adopted in California in 1917, authorities in many jurisdictions, including California, have taken the view that concurrent execution of a note and a contract under which the payee has certain executory obligations will not, in and of itself, impair the negotiability and resulting commercial value of the note.
 
 (Commercial Credit Corp.
 
 v.
 
 Orange County Machine Works,
 
 34 Cal.2d 766, 770 [214 P.2d 819], and eases cited. See also 44 A.L.R.2d 8, 57 et seq. and cases cited.) This view has obtained where the note is secured by a conditional sales contract
 
 (Commercial Credit Corp.
 
 v.
 
 Orange County Machine Works, supra;
 
 44 A.L.R.2d 8, 58-59), even where the note refers to the contract or is physically attached to the contract when executed.
 
 (Commercial Credit Corp.
 
 v.
 
 Orange County Machine Works, supra;
 
 44 A.L.R.2d 8, 59 et seq.) Similarly, except where a statute provides to the contrary, it is generally conceded that the mere fact that a promissory note is secured by a chattel mortgage does not impair the negotiability of the note. (44 A.L.R.2d 8, 67 et seq.) This view obtains in California where a note is secured by a mortgage on real or personal property, by virtue of section 3265 of the Civil Code, providing in relevant part that “. . . the negotiability of a promissory note otherwise negotiable in form, secured by a mortgage or deed of trust upon real or personal property shall not be affected or abridged by reason of a statement therein that it is so secured, nor by reason of the fact that said instrument is so secured nor by any conditions contained in the mortgage or deed of trust securing the same.” (See also
 
 Hayward Lbr. & Inv. Co.
 
 v.
 
 Naslund,
 
 125 Cal.App. 34, 38-39 [13 P.2d 775] ;
 
 Witty
 
 v.
 
 Clinch,
 
 207 Cal. 779, 785 [279 P. 797].)
 

 Pursuant to these rules and in keeping with the purpose of furthering the integrity of commercial paper underlying the Negotiable Instruments Law, we hold that contemporaneous execution and transfer of a promissory note and a nonnegotiable contract securing performance by a lien on real property does not, in and of itself, impair the negotiability of the note. And, since the transfer of the note constitutes a transfer of the lien which is an incident thereof (Civ. Code, § 1084;
 
 Union Supply Co.
 
 v.
 
 Morris,
 
 220 Cal. 331, 338-339 [30 P.2d 394];
 
 Cockerell
 
 v.
 
 Title Ins. & Trust Co.,
 
 42 Cal.2d 284, 291 [267 P.2d 16]), if appellant is entitled, as a holder in due
 
 *697
 
 course, to bring suit on the note, he is similarly entitled to foreclose the lien. (See, e.g.,
 
 Hayward Lbr. & Inv. Co.
 
 v.
 
 Naslund, supra,
 
 at 40.)
 

 “A holder in due course is a holder who has taken the instrument under the following conditions:
 

 “ (1) That it is complete and regular upon its face;
 

 “ (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
 

 “ (3) That he took it in good faith and for value;
 

 “ (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.” (Civ. Code, § 3133.)
 

 “To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that this action in taking the instrument amounted to bad faith. ’ ’ (Civ. Code, § 3137.)
 

 It has been uniformly held that the requirement of “good faith,” imposed by the Negotiable Instruments Law, generally means that the transaction was honestly conceived and consummated without collusion, fraud, knowledge of fraud or intent to assist in the perpetration of a fraud. (8 Cal.Jur. 2d 405, Bills and Notes, § 81; 8 Am.Jur. 118 et seq., Bills and Notes, § 383, and cases cited.) The mere presence of suspicious circumstances which would be sufficient to put a reasonably prudent individual on inquiry does not negative the existence of good faith.
 
 (Goodale
 
 v.
 
 Thorn,
 
 199 Cal. 307, 314 [249 P. 11];
 
 Christian
 
 v.
 
 California Bank,
 
 93 Cal.App.2d 230, 232-233 [208 P.2d 784] ;
 
 Sasner
 
 v.
 
 Ornsten,
 
 93 Cal.App. 2d 467, 471 [209 P.2d 44];
 
 Howell
 
 v.
 
 Dowling, 52
 
 Cal.App. 2d 487, 494 [126 P.2d 630] ;
 
 Witty
 
 v.
 
 Clinch, supra,
 
 207 Cal. 779, 783. See also 8 Am.Jur. 123 et seq., Bills and Notes, § 388, and cases cited; 44 A.L.R2d 8, 97 et seq., and eases cited; 26 So. Cal. L. Rev. 435, 436, and cases cited; 8 Cal.Jur .2d 405-408, Bills and Notes, §§81, 82.)
 

 Knowledge that a note was given in consideration of an executory agreement not yet performed by the payee does not prevent an indorsee for value from being a holder in due course, unless he has notice of a breach of the agreement.
 
 (Splivallo
 
 v.
 
 Patten,
 
 38 Cal. 138, 139 [99 Am.Dec. 358] ;
 
 Flood
 
 v.
 
 Petry,
 
 165 Cal. 309, 314, et seq. [132 P. 256, 46 L.R.A. N.S. 861]; 26 So. Cal. L. Rev. 435, 436. And see, generally,
 
 *698
 
 44 A.L.R.2d 8, 97-134, and cases cited.) Nothing short of actual knowledge of defects in the instrument or of actual bad faith will defeat the status of an endorsee who otherwise qualifies as a holder in due course. (Civ. Code, § 3137; 26 So. Cal. L. Rev. 435, citing
 
 Lawson
 
 v.
 
 Weston,
 
 4 Esp. 56, 170 Eng. Rep.
 
 640;
 
 8 Am.Jur. 123 et seq., Bills and Notes, § 388; 44 A.L.R.2d 8, 97 et seq., and cases cited.)
 

 1 ‘ The mere fact that a note is purchased for an amount less than its face, or that an unusually large discount is accepted, is never of itself sufficient to charge the purchaser with notice of existing equities, unless the consideration is merely nominal or the rate of discount so great as to compel the inference that the negotiation is fraudulent or in some way illegal or unauthorized.” (10 C.J.S. 824-825, Bills and Notes, § 327. And see
 
 Imperial Gypsum & Oil Corp.
 
 v.
 
 Chaplin,
 
 4 Cal.App.2d 109, 112-113 [40 P.2d 596];
 
 Anderson
 
 v.
 
 Lee,
 
 103 Cal.App.2d 24, 27 [228 P.2d 613].) While there is a special duty to make inquiry where an instrument is offered for sale at a price less than one-half or one-third of its face value
 
 (Boyd
 
 v.
 
 Bearce,
 
 48 Cal.App. 46, 51 [191 P. 560];
 
 Jordan
 
 v.
 
 Grover,
 
 99 Cal. 194, 195-196 [33 P. 889] ;
 
 Bernstein
 
 v.
 
 Pacific States Savings & Loan Co.,
 
 19 Cal.App.2d 679, 682 [66 P.2d 699]), “an offer to sell a secured note for two thirds its value is not itself sufficient to raise an inference that the instrument is tainted.”
 
 (Anderson
 
 v.
 
 Lee, supra.)
 
 Inadequacy of consideration may be considered as evidence of bad faith and,
 
 if suspicious circumstances are present,
 
 may authorize a finding of bad faith. (10 C.J.S. 825, Bills and Notes, § 327;
 
 Imperial Gypsum & Oil Corp.
 
 v.
 
 Chaplin, supra,
 
 at 113;
 
 Anderson
 
 v.
 
 Lee, supra.)
 

 The promissory note in the case at bar is complete and regular on its face and there is nothing in the record to suggest that it was not so when negotiated to appellant. Appellant purchased the note approximately one month before the due date of the first installment. The manager of appellant ’s finance company tesified that he had purchased the note and contract for $589. He further testified that he had purchased a substantial number of similar contracts in the course of his business, that he knew nothing of the dealings between respondents and Mission Supply, Inc., and that while he had not specifically inquired as to whether or not the work had been completed he was of the opinion that the work had been done. In the complete absence of any evidence whatever to contradict this testimony, we hold that there was no evidence
 
 *699
 
 to support the trial court’s finding that appellant had notice of the defenses of the makers and, therefore, that appellant was entitled to the protections accorded a holder in due course of section 3138 of the Civil Code.
 

 Nothing in
 
 Commercial Credit Corp.
 
 v.
 
 Orange County Machine Works, supra,
 
 34 Cal.2d 766, or similar cases in other jurisdictions
 
 [1]
 
 compels, or even supports, a position contrary to that taken in the instant ease. Contrary to the general weight of authority, such eases create an exception to the usual rules governing the holder in due course status. This exception, as stated in
 
 Commercial Credit Corp.
 
 v.
 
 Orange County Machine Works, supra,
 
 at 771, is as follows: “When a finance company actively participates in a transaction of this type from its inception, counseling and aiding the future vendor-payee, it cannot he regarded as a holder in due course of the note given in the transaction and the defense of failure of consideration may properly he maintained.”
 

 That this treatment of a finance company as an original party to the transaction, or as the true payee, is exceptional is indicated by the many cases holding that numerous actions by finance companies, e.g., a close business association with the named payee, furnishing forms to the seller for execution by the chattel purchaser and including thereon a form of indorsement to the finance company, will not deprive the finance company of its status as a holder in due course.
 
 (Wilson
 
 v.
 
 Gorden
 
 (D.C.) 91 A.2d 329; 128 A.L.R. 729, 730-732 and eases cited; 44 A.L.R.2d 8, 137-139, 141, 144 et seq. and cases cited.)
 

 In the case at bar, the testimony of appellant’s manager to the effect that appellant had purchased over one million dollars worth of commercial paper from Mission Supply, Inc., indicates a very close business association. The printed form of indorsement to appellant in the lower left-hand corner of the contract of sale may give rise to an inference that appellant supplied Mission Supply, Inc., with the forms in question. However, there was no evidence whatsoever to indicate that appellant actively participated in the business of Mission Supply, Inc., that he agreed prior to the sale to finance the
 
 *700
 
 transaction or that he had any knowledge of or connection with the sale except as indorsee of a negotiable promissory note and assignee of the contract.
 

 In
 
 Wilson
 
 v.
 
 Gorden, supra,
 
 (D.C.) 91 A.2d 329, under circumstances similar to those present in the instant case, the court stated (at p. 330) : “Defendants claim that plaintiff was in reality a payee due to the close association between plaintiff and the television firm and that therefore they are entitled to avail themselves of the personal defenses available to the maker against a payee. This close association was attempted to be shown by the fact that plaintiff acquired title on the same date as the date of the sale of the television unit to defendants along with the exceptionally large discount coupled with plaintiff’s admission that he had furnished the television firm with blank conditional sales contracts. This evidence is not sufficient in law to defeat plaintiff’s claim as a holder in due course.”
 

 Reversed.
 

 Fox, P. J., and Ashburn, J., concurred.
 

 [1]
 

 See, e.g.,
 
 Commercial Credit Co.
 
 v.
 
 Childs,
 
 199 Ark. 1073 [137 S.W.2d 260, 128 A.L.R. 726];
 
 Mutual Finance Co.
 
 v.
 
 Martin
 
 (Fla.), 63 So.2d 649, 44 A.L.R.2d 1; Annotation; Finance company as holder in due course of paper which it purchases from dealer, 128 A.L.R. 729 et seq. and eases cited; Annotation, 44 A.L.R.2d 8, 134 et seq. and cases cited; 26 So. Cal. L. Rev. 435 and cases cited; 53 Harv. L. Rev. 1200 and eases cited.