[Civ. No. 6353.   Fourth Dist.   Jan. 13, 1961.]

WILLIAM M. GRIBBLE, JR., et al., Plaintiffs and Respondents, v. CLARENCE W. MAUERHAN et al., Defendants and Respondents; MAGIC WELL, INC. (a Corporation), Appellant.

CLARENCE W. MAUERHAN et al., Plaintiffs and Respondents, v. MAGIC WELL, INC. (a Corporation), Appellant; TRIPLE "A" MORTGAGE COMPANY (a Corporation) et al., Defendants and Respondents.

William B. Whitlow and James R. Smith for Appellant.

Warren L. Schutz, Jacobs, Jacobs, Hayden & Nelson, Robert Stedman and Robert P. Foster for Respondents.

COUGHLIN, J.—These are appeals from judgments in two actions involving certain real property in Orange County. The issues on appeal concern (1) the effect of an unrecorded deed of trust upon the title of the present owner, and (2) the amount actually secured by another deed of trust.

The court found, and the finding is undisputed, that Triple "A" Mortgage Company, a corporation, and Primary Funding, Inc., a corporation, were *alter egos* for William M. Gribble, Jr. Herein, for purposes of clarity, the foregoing entities will be referred to as "Gribble"; Magic Well, Inc., a corporation, the appellant, will be referred to as "Magic Well"; Clarence W. Mauerhan and Elizabeth Mauerhan, respondents, will be referred to as "Mauerhan"; and Joseph H. Lohrenz and Clara A. Lohrenz, also respondents, will be referred to as "Lohrenz."

On June 4, 1957, "Gribble" and "Mauerhan" entered into an escrow to effect a purchase of the real property in question by the former from the latter. Under this agreement "Mauerhan" was to accept a $30,000 note secured by deed of trust upon the property as part of the purchase price, but agreed not to record the same until "Gribble" had obtained a construction loan.

Prior and subsequent to this date "Magic Well" had been interested in this property, having leased it from "Gribble" under the representation that a restaurant would be constructed thereon, and paid $33,000 on account of rental.

On October 22d of the same year John May, as president of "Magic Well," "Mauerhan" and his attorney Mr. Schutz, and "Gribble's" representative, Mr. Cantillion, conferred with respect to matters involving the property. It appears that "Mauerhan" was demanding the posting of a performance bond, which would assure the construction of a building on the subject property, before he would agree to close the escrow. At this conference reference was made to this demand; to the trust deed note held by "Mauerhan"; and to the latter's need for protection of his security. Cantillion advised Schutz that if "Mauerhan" did not close the escrow forthwith, without requiring the posting of a performance bond, "Magic Well" would sue "Gribble" and he, Schutz, could be assured that "Gribble" would sue "Mauerhan." May, who was present at this conversation, confirmed this prospect. A week later, the escrow was closed; the deed from "Mauerhan" to "Gribble" was recorded on October 29; and the $30,000 note and deed of trust were delivered to May but, in accord-

ance with their prior agreement, were not recorded until several months later, i.e., March 13, 1958. However, on October 30, 1957, "Mauerhan" caused a "Notice of Agreement of Sale" to be recorded which described the property in question and referred to the aforesaid agreement of sale and the escrow with respect thereto.

Shortly thereafter, by deed dated November 12, 1957, and recorded November 25, 1957, "Gribble" conveyed the property to H. J. Farrington. Subsequently Farrington executed a note in the sum of $45,000 payable to "Gribble," under the title of Primary Funding, Inc., which was secured by a deed of trust upon the property in question. Both "Gribble" and Farrington testified that the consideration therefor was the execution of a demand note in the sum of $35,000 by Gribble under the title of Primary Funding, Inc., in favor of Farrington. The deed of trust securing the $45,000 note was dated February 1, 1958, and recorded on February 7th of the same year. Following this transaction "Gribble" assigned the $45,000 note and deed of trust to "Lohrenz" by an instrument dated February 10, 1958, and recorded February 20, 1958. "Lohrenz" paid "Gribble" $37,125 for this assignment.

Shortly thereafter, Farrington conveyed the property to "Magic Well" by deed dated February 28, and recorded March 7th. This conveyance followed receipt of a letter from "Gribble's" attorney Mr. Whitlow, which stated that the property was subject to a $45,000 encumbrance but did not mention the $30,000 note to "Mauerhan." "Magic Well" made no inquiry of "Mauerhan" respecting the note and deed of trust referred to in the discussion respecting "Mauerhan's" demand for the posting of a performance bond.

On March 13th, as heretofore noted, "Mauerhan" recorded the $30,000 deed of trust which had been executed as part payment for conveyance of the real property to "Gribble."

The actions which resulted in the judgments from which the appeals pending before this court were taken, followed. In substance, by these judgments the trial court decreed (1) that "Magic Well" was the owner of the subject property; (2) that the trust deed held by "Lohrenz" securing the $45,000 note was a first encumbrance against the property for the full amount of that note; (3) that the trust deed held by "Mauerhan" securing the $30,000 purchase note was a second encumbrance against the property; (4) that "Magic Well"

should recover $32,000 in damages from "Gribble"; (5) and directed foreclosure of the aforesaid deeds of trust.

"Magic Well" has appealed from the judgments contending that they are erroneous, (1) insofar as they sustain the claim of "Lohrenz" to the full $45,000, claiming that "Lohrenz" is entitled only to the sum of $37,125, which was the amount paid for the assignment of the note to them; and (2) also insofar as they sustain the claim of "Mauerhan" under the deed of trust against the subject property, contending that "Mauerhan" is estopped to assert such claim.

With respect to the "Lohrenz" note for $45,000, "Magic Well" contends that the note in question was void and of no effect for any amount in excess of $37,125 because it originally was issued for no consideration and was given life by the subsequent assignment only to the extent of the amount paid therefor, viz., $37,125. This contention is without merit for at least two reasons: (1) Under the evidence, which we must assume was accepted by the trial court (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]), "Gribble" executed a $35,000 demand note in exchange for the $45,000 note by Farrington; this constituted a sufficient consideration (*Tumansky* v. *Woodruff*, 14 Cal.App.2d 279, 283 [57 P.2d 1372]); and (2) the evidence also supports the conclusion that "Lohrenz" was a holder in due course of the $45,000 note, which was a negotiable instrument; that, therefore, "Lohrenz" held their note free of any defense of lack of consideration (Civ. Code, § 3138; *English* v. *Shipley,* 71 Cal. App. 45, 49 [234 P. 334]; *Commercial S. Co.* v. *Modesto Drug Co.*, 43 Cal.App. 162, 177 [184 P. 964]); and, consequently, the deed of trust securing the same, likewise, was free of such defense. (*Mann* v. *Leasko,* 179 Cal.App.2d 692, 696 [4 Cal. Rptr. 124]; *City Lumber Co.* v. *Park,* 14 Cal.App.2d 431, 433 [58 P.2d 403]; *Hayward Lbr. & Inv. Co.* v. *Naslund,* 125 Cal. App. 34, 39 [13 P.2d 775].)

The fact that "Lohrenz" purchased the note at a substantial discount, although a circumstance material to a determination whether his purchase was in good faith (*Jordan* v. *Grover,* 99 Cal. 194, 195 [33 P. 889]; *Anderson* v. *Lee,* 103 Cal.App.2d 24, 27 [228 P.2d 613]; *Bernstein* v. *Pacific States Sav. etc. Co.,* 19 Cal.App.2d 679, 682 [66 P.2d 699]; *Boyd* v. *Bearce,* 48 Cal.App. 46, 50 [191 P. 560]), was not, of itself, sufficient to charge them with notice of any defense thereto (*Mann* v. *Leasko, supra,* 179 Cal.App.2d 692, 697; *Anderson* v. *Lee, supra,* 103 Cal.App.2d 24, 27; *Imperial Gypsum & Oil*

*Corp.* v. *Chaplin,* 4 Cal.App.2d 109, 112 [40 P.2d 596]), and does not limit their recovery to the amount paid by them for the assignment.

As to the deed of trust securing the "Mauerhan" note for $30,000, "Magic Well" claims that the judgment should have been rendered in its favor under the doctrine of estoppel; that, by withholding recordation of this deed of trust and remaining silent as to its existence "Mauerhan," in substance, represented its nonexistence and is now estopped to assert its existence.

Regardless of whatever else may be said about this contention, the fact remains that the trial court found that "Magic Well" had knowledge of the existence of this deed of trust; that this finding is supported by the evidence; and that the possession of such knowledge forecloses its reliance upon the doctrine of estoppel.

The court found: "That Magic Well, Inc. is charged with actual notice of the Mauerhan Trust Deed Note by reason of a long, prolonged and heated conversation, occurring on October 22, 1957, at which John S. May, as President of Magic Well, Inc. was present, between Warren L. Schutz representing Mauerhan and Mr. Contillon [*sic*], wherein the fact of the unrecorded trust deed note owned by Mauerhan was discussed, and wherein a completion bond that was to be given by Triple 'A' Mortgage Co. to Mauerhan was also discussed."

The evidence with respect to this issue heretofore has been related and fully supports the finding made.

"Magic Well" contends that proof of its knowledge of this deed of trust on October 22, 1957, is not proof of its knowledge of the existence thereof on October 29, 1957, which is the date when the "Mauerhan-Gribble" escrow was closed. However, the evidence shows that "Magic Well" had been interested in the subject property at all times since April 10, 1957, when it took a lease thereof from "Gribble"; that "Gribble" was to build a restaurant on the property which was to be operated by "Magic Well"; that it paid $33,000 on this lease in reliance upon the representation by "Gribble" of the availability of whatever financial credit was necessary to construct the restaurant; and that eventually, after negotiations with "Gribble," "Magic Well" cancelled this lease in consideration of the transfer of the property to it by Farrington. Before taking a deed to that property "Magic Well's" attorney suggested a title search but its president, Mr. May, rejected this suggestion with the observation that they would get title to the

property first and check on the title afterwards, although May had consulted a title company to ascertain the name of the present owner but refrained from making any inquiry about encumbrances or claims against the property. After its deed had been received and recorded, "Magic Well" obtained a title report which showed recordation of the "Notice of Agreement of Sale" that had been recorded by "Mauerhan." The deed from Farrington to "Magic Well" recited that it was subject to all notices of record.

To recover under the doctrine of equitable estoppel, which grants relief in contradiction to a true state of facts, it must be shown that the party relying on the doctrine was ignorant of the true state of facts. (*Moss* v. *Underwriters' Report, Inc.*, 12 Cal.2d 266, 273 [83 P.2d 503]; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.*, 1 Cal.2d 121, 128 [34 P.2d 139]; *Rockefeller* v. *Smith*, 104 Cal.App. 544, 550 [286 P. 487].) To prove such ignorance "it is necessary that the evidence show not only that the party claiming the estoppel did not have actual knowledge of the true facts but that he did not have notice of facts sufficient to put a reasonably prudent man upon inquiry, the pursuit of which would have led to actual knowledge; the convenient or ready means of acquiring knowledge being the equivalent of knowledge." (*Banco Mercantil* v. *Sauls Inc.*, 140 Cal.App.2d 316, 323 [295 P.2d 55]; *Smith* v. *Penny*, 44 Cal. 161, 165; *Dean* v. *Parker*, 88 Cal. 283, 288 [26 P. 91]; *Nilson* v. *Sarment*, 153 Cal. 524, 531 [96 P. 315, 126 Am.St.Rep. 91]; *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 297 [253 P. 137]; *Jones* v. *Coulter*, 75 Cal.App. 540, 550-551 [243 P. 487].) The determination by the trial court upon the issue of estoppel is supported by the evidence and the law.

Although appellant does not expressly rely upon the provisions of sections 1214 and 1215 of the Civil Code, which declare void a deed of trust as against a subsequent purchaser of property "in good faith" whose conveyance is first duly recorded, it would appear that the law applicable to the situation at hand is that prescribed by those sections. The outcome, however, remains unchanged, as the court's finding that "Magic Well" has actual notice of the "Mauerhan" deed of trust removes it from the status of a purchaser in good faith. (*Slaker* v. *McCormick-Saeltzer Co.*, 179 Cal. 387, 388 [177 P. 155]; *Bell* v. *Pleasant*, 145 Cal. 410, 413 [78 P. 957, 104 Am.St.Rep. 61]; *Sieger* v. *Standard Oil Co.*, 155 Cal.App.2d 649, 656 [318 P.2d 479].) The evidence not

only supports an inference that Mr. May, the president of "Magic Well," had actual notice of the existence of the "Mauerhan" deed of trust, because it was the subject of the discussion in connection with the "Mauerhan" demand for a completion bond, but also supports an implied finding that he had constructive notice thereof under "the general rule that whatever is sufficient to direct the attention of a purchaser or encumbrancer to the prior rights or equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as a notice of the facts." (*Olson* v. *Cornwell*, 134 Cal. App. 419, 428 [25 P.2d 879]; Civ. Code, § 19; *Lawton* v. *Gordon*, 37 Cal. 202, 205; *Montgomery* v. *Keppel*, 75 Cal. 128, 131 [19 P. 178, 7 Am.St.Rep. 125]; *Pellissier* v. *Title Guarantee etc. Co.*, 208 Cal. 172, 184-185 [280 P. 947].)

Constructive as well as actual notice of a prior unrecorded deed of trust removes a subsequent purchaser from the protection of the recording acts. (*March* v. *Pantaleo*, 4 Cal.2d 242, 243 [48 P.2d 29]; *Sieger* v. *Standard Oil Co.*, *supra*, 155 Cal.App.2d 649, 656; *Holman* v. *Toten*, 54 Cal.App. 2d 309, 315 [128 P.2d 808].)

The judgments are affirmed.

Griffin, P. J., and Shepard, J., concurred.