**BARCLAYS DISCOUNT BANK LTD., Plaintiff,**

v.

**BOGHARIAN BROS., INC., Defendant.**

**BARCLAYS DISCOUNT BANK LTD., Plaintiff,**

v.

**ORYOUN JEWELRY IMPORTS, Defendant.**

**BARCLAYS DISCOUNT BANK LTD., Plaintiff,**

v.

**Sam LEVY, individually and doing business as Sam's Gem Trading, Defendant.**

**ISRAEL DISCOUNT BANK LTD., Plaintiff,**

v.

**Sam LEVY, individually and doing business as Sam's Gem Trading, Defendant.**

**ISRAEL DISCOUNT BANK LTD., Plaintiff,**

v.

**Sam LEVY, individually and doing business as Sam's Gem Trading, Defendant.**

**Nos. 81–1747, 81–2263, 81–2264, 81–2599 and 81–3848AWT.**

United States District Court, C.D. California.

Aug. 8, 1983.

---

**9.** Jones really does not essay a substantive response to Lane's equal protection argument.

Frederick L. McKnight, James H. Berry, Jr., William T. Drescher, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for plaintiffs Barclays Discount Bank Ltd. and Israel Discount Bank Ltd.

Thomas J. Weiss, Pacht, Ross, Warne, Bernhard & Sears, Inc., Los Angeles, Cal., for defendants Bogharian Bros., Inc. and Oryoun Jewelry Imports.

Philip R. Homsey II, Los Angeles, Cal., for defendant Sam Levy.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

Plaintiffs seek summary judgment in these five actions for collection of promissory notes.[1] Plaintiffs are banks operating out of the Diamond Exchange in Ramat Gan, Israel. Defendants, three American diamond merchants, issued a total of seven notes[2] to Leo Siegman, a leading Israeli diamond dealer, as security for diamonds purchased by the defendants. Siegman endorsed three notes to plaintiff Barclays Discount Bank Ltd. ("Barclays") and four notes to plaintiff Israel Discount Bank Ltd. ("IDB") as collateral for his pre-existing obligations to the banks and as collateral for the diamonds shipped to defendants.[3] Plaintiffs presented the notes for payment as they came due; they were returned unpaid. Plaintiffs then commenced these actions for collection of the dishonored notes.

Plaintiffs contend that they are holders in due course; therefore, that they are entitled to recover on the notes. Defendants, on the other hand, contend that plaintiffs had notice of an industry-wide custom that notes given by merchants in exchange for diamond shipments were to be discharged by the holder should the diamonds be returned to the dealer by the merchants. Alternatively, defendants argue that plaintiffs had notice of executory, collateral agreements between the respective defendants and Siegman that the notes would be discharged upon the return of merchandise to Siegman.

## I. CHOICE OF LAW

As a preliminary matter, the Court must determine whether California law, specifically the California Commercial Code, or Israeli law governs this action. Cal. Comm.Code § 1105(1) (West Supp.1983) provides that, in the absence of an agreement between the parties, the California Commercial Code applies to "transactions bearing an appropriate relation to this State." Whether a transaction bears an appropriate relation to California may be determined in contract actions by reference to Cal.Civ.Code § 1646. Cal.Comm.Code § 1105(1) comment at ¶ 1. Under § 1646, "In California, a contract is governed by the law and usage of the place where it is to be performed, or, if place of performance is not indicated, by the law and usage of the place where it is made." *Henderson v. Superior Court,* 77 Cal.App.3d 583, 592, 142 Cal.Rptr. 478 (1978).

---

1. Nos. CV 81–1747, 81–2599 and 81–3848 were consolidated on January 19, 1982. The remaining two cases, Nos. 81–2263 and 81–2264, have not been consolidated. Because all five motions for summary judgment present the identical issues, all of them are disposed of in this memorandum opinion.

2. The seven notes are: (1) The Bogharian note for $166,563; (2) The two Oryoun notes for $100,000 each; (3) The two Levy notes held by Barclays for $100,000 and $115,000; and (4) The two Levy notes held by Israel Discount Bank for $100,000 and $143,000.

3. The transactions took place in the following manner: Siegman borrowed money from the plaintiff banks on the credit of his accounts receivable. These accounts took the form of promissory notes given to Siegman by diamond merchants to whom Siegman sold or consigned diamonds. Siegman endorsed the notes to plaintiffs; plaintiffs then would release diamonds (of such value as the banks deemed were sufficiently secured by the notes) for shipment to diamond merchants.

The businesses of defendants are located in California. All of the notes at issue, by their terms, are payable in dollars upon demand in banks located in California, and all were dishonored in California. Because California is the place of performance of the notes, the California Commercial Code governs these actions. *See also Pratt v. Dittmer,* 51 Cal.App. 512, 517, 197 P. 365 (1921) (notes to be interpreted under the law of the place where they are payable).

## II. HOLDER IN DUE COURSE STATUS

■ A holder in due course of a note is a holder who takes a note for value, in good faith, and without notice of any defense to the payment of the note. Cal.Comm.Code § 3302(1).

### A. *For Value*

■ A holder takes a note for value, "[w]hen he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due...." Cal.Comm.Code § 3303(b). Plaintiffs took the notes as partial security for Siegman's loans and as additional collateral for Siegman's entire outstanding debt to plaintiffs. This outstanding debt was an antecedent claim of plaintiffs against Siegman. Therefore, plaintiffs took the notes for value when they accepted them as additional collateral for Siegman's debts. *Swiss Credit Bank v. Chemical Bank,* 422 F.Supp. 1305, 1311 (S.D. N.Y.1976).

### B. *Without Notice of Any Defense*

■ In order to qualify as a holder in due course, a holder must take the instrument "[w]ithout notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Cal.Comm.Code § 3302(1)(c). A holder has notice of a claim or defense if it has notice that "the obligation of any party is voidable in whole or in part, or that all parties have been discharged." Cal.Comm.Code § 3304(1)(b). Defendants' argument that plaintiffs had notice of a defense to the notes is two-pronged. First, they contend that plaintiffs had notice that the notes were voidable because plaintiffs knew that the notes were subject to executory promises between defendants and Siegman. Second, defendants contend that plaintiffs had notice that the obligations were voidable because plaintiffs were aware that the notes were rescindable at will pursuant to industry custom.[4]

### 1. *Executory Agreements*

■ Cal.Comm.Code § 3304(4)(b) provides that a holder's knowledge that a note was issued in return for an executory promise or a separate agreement does not constitute notice of a defense unless the holder had notice that a defense had arisen under the terms of the executory agreement. Where a defense has arisen to the executory agreement, the obligation is voidable and a holder who takes with notice of that defense is precluded from asserting holder in due course status. Cal.Comm.Code § 3304(1)(b). Even assuming that plaintiffs had notice of the executory agreements between defendants and Siegman, defendants must also show that plaintiffs knew, prior to taking the notes, of defenses arising from the executory promise. *Mann v. Leasko,* 179 Cal.App.2d 692, 697, 4 Cal. Rptr. 124 (1960). *See also Valley Bank and Trust Co. v. American Utilities,* 415 F.Supp. 298, 301 (E.D.Pa.1976); U.C.C. § 3–304 comment at ¶ 10.

---

**4.** Plaintiffs' contention that evidence of the executory agreements is barred by the parole evidence rule is mistaken. The parole evidence rule is not applicable in this case. Cal.Comm. Code § 3302(1) sets out the elements required to achieve holder in due course status. The introduction of evidence to demonstrate that a holder has failed to satisfy one or more of the requirements is contemplated by the Code. Defendants seek to introduce evidence of the executory agreements not to vary the terms of the note, but to show that the plaintiffs are not holders in due course. Therefore, the parole evidence rule does not bar the admission of evidence of the executory agreements. For a concise discussion of the applicability of the parole evidence rule in a similar case, *see First Int'l Bank v. L. Blankstein & Son, Inc.,* Nos. 244 & 245, slip op. at 9 (N.Y. June 30, 1983).

Defendant Levy (Nos. CV 81–2264, 81–2599 and 81–3848) contends that he never received diamonds from Siegman in return for his promissory note, and that plaintiffs had notice of this defense. Assuming that Levy in fact never received any diamonds, there is no evidence in the record to support Levy's contention that plaintiffs had notice of that fact. In July 1980, Levy executed the first two notes to Siegman. Siegman endorsed these notes to Barclays in late July and early August 1980. Levy executed two more notes to Siegman in October 1980. Siegman endorsed these notes to IDB in late October and late November 1980. Levy does not allege that either Barclays or IDB had notice that Levy had not received diamonds in exchange for his notes, nor do the exhibits submitted by Levy support such an inference. Therefore, I find it to be an uncontroverted fact that plaintiffs did not have notice of a defense to the Levy notes.

Defendant Bogharian (No. CV 81–1747) contends that he returned diamonds to Siegman, and that plaintiff Barclays had notice of this defense to the promissory note. The record clearly demonstrates and is uncontradicted that Barclays in fact did not have such notice. In his affidavit, Bogharian states that he executed the promissory note to Siegman in return for diamonds delivered to him in late 1979. Bogharian further contends that he returned the diamonds to Siegman in late September 1980. However, Siegman endorsed the notes to Barclays in August 1980, prior to any return of diamonds. Therefore, I find it to be an uncontroverted fact that Barclays did not have notice of any defense to the Bogharian note prior to becoming a holder.

Defendant Oryoun (No. CV 81–2263) contends that it both returned diamonds and made cash payments to Siegman, and that Barclays had notice of such payments. Again, I find that the record clearly demonstrates the contrary. In his affidavit, Bloch, Oryoun's president, states that he executed two notes to Siegman in May 1980. He further contends that he made several cash payments and returned diamonds to Siegman between February 1981 and April 1981. However, Siegman endorsed the notes to Barclays on May 30, 1980, prior to any alleged cash or diamond payments. Therefore, I again find it to be an uncontroverted fact that Barclays did not have notice of any defense to the Oryoun notes prior to becoming a holder.

### 2. *Rescindable at Will*

Defendants contend that plaintiffs had notice that the notes were not unconditional obligations to pay but in fact were rescindable at will pursuant to an industry-wide custom that notes given in exchange for diamond shipments were to be discharged by the holder-bank should the diamonds be returned by the merchants. A note predicated upon an agreement which is rescindable at will is a voidable obligation. *See* Restatement (Second) of Contracts § 7 (1981); *cf. Kowal v. Day,* 20 Cal.App.3d 720, 724, 98 Cal.Rptr. 118 (1971) (unqualified right to rescind renders contract illusory and voidable). If plaintiffs actually knew of the voidability of the underlying obligation, they cannot be holders in due course of the notes. Cal.Comm.Code § 3304(1)(b). *See Szczotka v. Idelson,* 228 Cal.App.2d 399, 39 Cal.Rptr. 466 (1964) (issue of knowledge of "infirmity" of note alleged to be void and usurious).

Cal.Comm.Code § 3307(2) provides that when a holder produces a properly signed instrument, as has been done in the instant cases, the burden is on the person seeking to avoid payment of the note to demonstrate that a genuine defense exists. Accordingly, I now turn to an examination of the record before the Court to determine whether defendants' proof is sufficient to demonstrate a material issue of fact as to the existence of a genuine defense.

All defendants have submitted affidavits stating that it is common practice for diamond merchants to receive goods on consignment and to secure payment for the goods with promissory notes. The defendants also state that both they and Siegman were aware of this practice and were aware

that the return of merchandise would discharge the notes. However, nowhere in these affidavits do defendants state that the *plaintiffs* were aware of the existence of such a custom. In his affidavit, Bloch, the president of defendant Oryoun, states that he understood that upon the return of merchandise, *Siegman* would obtain release of the notes. Again, nowhere in any affidavits do defendants state that the *banks* would discharge the notes upon return of merchandise to Siegman.

Plaintiffs have submitted affidavits from five bank employees. These employees have been employed by the banks from three to twenty-three years. Three of the five employees are or were at the Diamond Exchange Branch of the plaintiff banks; four of the five are or were employed in a managerial capacity. All of the employees state that they are familiar with Israeli diamond and banking industry practices and with the practices of Siegman in particular. In all of their affidavits, the employees state that they are not aware of any custom or practice by which promissory notes are issued conditionally and not as binding obligations, nor are they aware of any practice permitting a note to be cancelled by the maker merely by returning merchandise to the note's payee.

I conclude that defendants have failed to adduce sufficient facts to show (*i.e.,* to raise a controverted issue of fact) that plaintiffs had actual notice that the notes were subject to voidable obligations. Defendants' affidavits demonstrate only that Siegman was aware of the "custom" that notes issued to him to insure payment for diamond merchandise would be discharged upon return of the merchandise. However, defendants have failed to demonstrate that plaintiffs had notice of such a custom.

## CONCLUSION

Summary judgment is proper if there does not exist any genuine issue of material fact and, on those uncontroverted facts, "the movant is clearly entitled to judgment as a matter of law." *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1322 (9th Cir.1982). In the absence of any evidence controverting their showing, plaintiffs have satisfied the requirements of Cal.Comm. Code § 3302(1) in that they took the notes for value, in good faith, and without notice of any claims or defenses. Plaintiffs are holders in due course of the notes at issue in these actions. Therefore, they are entitled to summary judgment.

ORDER

For the foregoing reasons,

IT IS ORDERED that plaintiffs' motions for summary judgment in each of these five cases is GRANTED. Individual Judgments in accordance herewith will be entered in each case.