[Nos. A048009, A048008. First Dist., Div. One. Feb. 1, 1991.]

GROWTH EQUITIES CORPORATION, Plaintiff and Appellant, v. EZEKIEL FREED et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication. Those portions directed to be published follow. Some portions to be deleted are noted by the insertion of the following symbol at the points of omission [[]].

## COUNSEL

Peter S. Buchanan and Anne E. Thorkelson for Plaintiff and Appellant.

King, Weiser, Edelman & Bazar and Michael J. Bornfeld for Defendants and Respondents.

## OPINION

**STEIN, J.**—Growth Equities Corporation (GEC) appeals from judgments of dismissal following successful demurrers by Michael M. Edelstein (No. A048008) and Ezekiel Freed (No. A048009) to GEC's third amended complaints seeking recovery upon notes executed by Freed and Edelstein. The issues raised in each case are the same and the appeals have been consolidated. GEC [[ ]]* contends that the court erred in finding that the notes were nonnegotiable and that this court should find them to be negotiable as

---

*See footnote, *ante*, page 506.

a matter of law. [[]]* We hold that the court correctly found that the notes were nonnegotiable on their face.

FACTS

After the court sustained a series of demurrers to GEC's complaints, GEC filed its third amended complaint, the basic allegations of which were as follows: In 1981 Freed and Edelstein each invested as a limited partner in Earthquake Command System, a research and development limited partnership organized by Menlo Research Corporation (Menlo). In conjunction with Edelstein's investment, he executed and delivered to Menlo a recourse promissory note in the principal amount of $30,000 with interest at the annual rate of 9 percent, due and payable on September 23, 1988, to the order of Menlo or bearer. Freed executed an identical note, except that it was in the principal amount of $40,000 and was due and payable on September 21, 1988.

Each note contained the following language: "Said note is secured by and subject to the provisions of the partnership debt assumption agreement between the maker and payee hereof which is incorporated herein." The "Partnership Debt Assumption Agreement" (PDAA) listed several conditions precedent to payment on the note and also provided that the agreement was not assignable without the written consent of the limited partner.

On or about April 5, 1984, GEC made a loan to Menlo in the principal amount of $700,000. The loan was secured in part by the assignment of a package of limited partner investor promissory notes, including the notes executed by Freed and Edelstein. Menlo represented that the notes were or would be fully negotiable and were not subject to any conditions precedent.

On or about January 22, 1985, Menlo petitioned for chapter 11 bankruptcy. GEC obtained relief from the automatic stay to attempt to collect upon the limited partner notes that were partial security on its loan to Menlo.

Freed and Edelstein again demurred to the third amended complaint. The court issued a tentative ruling stating that it would sustain Freed and Edelstein's demurrers to the third amended complaints without leave to amend unless GEC could truthfully represent to the court that it had performed the conditions precedent contained in the PDAA and that Freed and Edelstein had given their written consent to assignment of the notes.[1] GEC could not truthfully so allege and the court therefore sustained the

---

*See footnote, *ante*, page 506.

[1] Implicit in this ruling was the court's conclusion that the notes were nonnegotiable.

demurrers without leave to amend. Thereafter the court entered judgments of dismissal in each case, and GEC filed these consolidated appeals.

ANALYSIS

In order for a writing to qualify as a negotiable instrument it must, "(a) Be signed by the maker or drawer; and (b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this division; and (c) Be payable on demand or at a definite time; and (d) Be payable to order or to bearer." (Cal. U. Com. Code, § 3104, subd. (1).)

The dispute in this case is whether the notes executed by Freed and Edelstein satisfy the requirement for negotiability set forth in subdivision (b) of section 3104, subdivision (1). The trial court apparently concluded that the language in the notes stating that they were "subject to" the terms of the PDAA rendered the notes nonnegotiable. It reached this conclusion based on the plain language of the notes and the express terms of California Uniform Commercial Code section 3105, which provides that if a note states it is "subject to" the terms of another agreement the promise to pay is conditional and the note is not negotiable.

Appellant argues [[ ]]* that the notes were negotiable as a matter of law.

. . . . . . . . . . . . . . . . . . . . .*

Respondents contend that the notes are nonnegotiable on their faces because they do not contain unconditional promises to pay. (Cal. U. Com. Code, § 3104, subd. (1)(b).) Section 3105, subdivision (2) of the California Uniform Commercial Code explains that "A promise or order is not unconditional if the instrument (a) States that it is *subject to or governed by* any other agreement . . . ." (Italics added.) Section 3105, subdivision (1)(e), however, provides that a note that contains a promise or order that is otherwise unconditional is not rendered conditional because it "[s]tates that it is secured, whether by mortgage, reservation of title, or otherwise." The notes in question state that they are both *"secured by* and *subject to"* the terms of the PDAA. The former reference to the PDAA as security does not undermine the negotiability of the note. (Cal. U. Com. Code, § 3105, subd. (1)(e).) The latter statement that the promise is "subject to" the PDAA, however, renders the note nonnegotiable. (Cal. U. Com. Code, § 3105, subd. (2)(a).) The comment to section 3105 explains that the purpose of this section is "to make it clear that, so far as negotiability is affected, the conditional or unconditional character of the promise or order *is to be determined by what is expressed in the instrument itself*; and to

---

* See footnote, *ante*, page 506.

permit specific limitations upon the terms of payment." (Italics added.) The notes in this case expressly stated that they were "secured by *and subject to*" the PDAA. Thus, they fall squarely within the provisions of section 3105, subdivision (2)(a).

Appellant seeks to avoid the effect of the phrase "subject to" appearing on the face of the note by arguing that we should disregard it as mere surplusage, and that we should interpret the note as if it stated simply that payment of the note was "secured by" the PDAA. Appellant cites no authority in support of its assertion that we should disregard the plain language of the note. Instead, appellant argues that the statements that the payment of the note is "secured by" the PDAA and that it is "subject to" the PDAA are mutually exclusive and that we should resolve the conflict by reading the phrase "subject to" as a redundancy. We, however, see no reason why the PDAA could not perform the dual functions of securing payment on the note and governing the terms of payment.

We found no California cases discussing the effect on negotiability of language in a note that refers to another agreement as security for performance, and also states that the note is "subject to" the terms of another agreement. However, the court in *Mitchell* v. *Riverside Nat. Bank* (Tex.Civ.App. 1981) 613 S.W.2d 802, 803, applying the Texas version of the Uniform Commercial Code section 3105, had no difficulty concluding that a note that was *secured by* a lien created in a lien contract *and* was "subject to and governed by" the lien contract was nonnegotiable. The same conclusion is appropriate in this case.

The legal consequence of stating that a note is "subject to" the terms of another agreement, i.e., that it renders the note nonnegotiable, is so basic that appellant's argument that we regard the use of such language as a mere redundancy is not persuasive. In the only case cited by appellant, *Mann* v. *Leasko* (1960) 179 Cal.App.2d 692 [4 Cal.Rptr. 124], the note was negotiable on its face. The court held only that the fact that a separate lien was executed at the same time as the note to provide security for performance of a conditional sales contract did not "impair the negotiability of the note." (*Id*. at p. 696.) The *Leasko* case simply illustrates the proposition now codified in California Uniform Commercial Code section 3105, subdivision (1)(e), that a statement in a note that it is "secured by" another agreement does not render the promises contained therein conditional and thereby impair the negotiability of the note. Nothing in *Leasko* supports appellant's contention that the unequivocal statement that a note is "subject to" another agreement should be disregarded if the note also states that the same agreement secures performance of the maker's obligations.

We conclude that [[ ]]* GEC cannot be a holder in due course because the nonnegotiability of the notes is apparent on their faces. (See *Danning* v. *Bank of America* (1984) 151 Cal.App.3d 961, 977 [199 Cal.Rptr. 163].)

## CONCLUSION

The judgment is affirmed.

Newsom, Acting P. J., and Dossee, J., concurred.

---

*See footnote, *ante*, page 506.