[Sac. No. 3664. In Bank.—January 21, 1927.]

## GENERAL MOTORS ACCEPTANCE CORPORATION (a Corporation), Respondent, v. C. W. GANDY, Appellant.

[1] Estoppel—Contracts—Guaranty—Insufficiency of Evidence.— In this action to recover a certain sum on a contract of guaranty it is held that the evidence does not warrant the finding that the defendant is estopped by reason of his conduct with respect to the several transactions involved from denying his liability upon a contract sued upon.

[2] Id.—Equitable Estoppel—Burden of Proof.—The existence of an estoppel is a question of fact, and the settled rule as to the proof of equitable estoppel is that the burden rests upon the party asserting such estoppel to prove all the elements constituting it by evidence having some reasonable tendency to establish the fact.

[3] Id.—Elements of Estoppel—False Representations—Concealment.—Among the dominant essentials of equitable estoppel or estoppel *in pais* is that there must have been a false representation or a concealment of material facts of the matter as to which the estoppel is claimed, and the party to whom such representation was made or from whom such facts were concealed must have been ignorant, actually and permissibly, of the truth of the matter.

[4] Id.—Proof—Character of.—As an equitable estoppel must be proved, as a rule, by oral testimony, the rule that certainty is essential to all estoppels is peculiarly applicable to estoppels *in pais*, and it must be established so as to leave nothing to surmise or questionable inference; and the representations, whether express or implied from the conduct of the party against whom the estoppel is sought to be invoked, must be such as to justify a prudent man in acting upon them, and must be plain and not doubtful.

[5] Id.—Successors and Assigns.—It is held in this action that the record presents no question involving the heirs, administrators, successors, or assigns of the respective parties to the contract of guaranty.

(1) 21 C. J., p. 1252, n. 93; 28 C. J., p. 1031, n. 89.    (2) 21 C. J., p. 1250, n. 82.    (3) 21 C. J., p. 1119, n. 12, p. 1120, n. 18, p. 1126, n. 51, p. 1129, n. 59.    (4) 21 C. J., p. 1252, n. 93, p. 1253, n. 94, 95. (5) 4 C. J., p. 521, n. 76.

2.  See 10 Cal. Jur. 656; 10 R. C. L. 845.
3.  See 10 Cal. Jur. 633, 636; 10 R. C. L. 691, 697.
4.  See 10 Cal. Jur. 656.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

A. J. Carlson for Appellant.

Charles W. Haswell and Haswell & Martin for Respondent.

LANGDON, J.—A petition for hearing in this court was granted in the above cause after decision by the district court of appeal, third appellate district. In said petition it was urged by the appellant that an important provision of the contract upon which the action was founded had been overlooked in the decision of the district court of appeal. No reply was made to this petition by the respondent. After careful consideration of the entire record we are of the opinion that the decision of the district court of appeal, third appellate district, written by Mr. Justice Hart, correctly states the law of this case and considers every material legal element involved therein with the exception of one additional feature urged by the appellant upon its petition for hearing in this court, which we shall discuss hereinafter. Accordingly we accept and adopt the said decision of the district court of appeal, as follows:

"This action was brought by plaintiff to recover the sum of $3,063.65 alleged to be the amount due on a contract of guaranty executed by the defendant for the purpose of indemnifying the former against any loss which it might incur by reason of taking over by purchase certain notes or other evidences of indebtedness accruing in favor of a certain partnership with which the defendant was connected as a copartner. The cause was tried by the court, sitting without a jury, and plaintiff was awarded judgment for the sum of $1,668.70, from which this appeal is prosecuted by the defendant upon a record made up in pursuance of the provisions of section 953a of the Code of Civil Procedure.

"The plaintiff, a corporation, as its name to an extent implies, is what is known as an acceptance corporation, engaged in the business of buying and discounting conditional contracts of sale of motor vehicles and promissory notes and

other written evidences of indebtedness given to dealers in such vehicles by those purchasing the same on credit.

"The defendant, at the time he executed the contract of guaranty upon which the plaintiff declares, and one J. A. Anderson were, as copartners and under the firm name of 'Modesto Motors Co.,' engaged, in the city of Modesto, in the business of selling the Oakland, the Davis, the Paige and the Haynes automobiles. The Oakland automobile was manufactured by a corporation known as the 'General Motors Corporation.' The copartnership arranged to discount its automobile paper—notes, conditional contracts of sale and other written evidences of indebtedness owing to it by purchasers of the automobiles from it on time credit—and to perfect said arrangement, and in pursuance of a demand by plaintiff therefor, the members of the partnership (defendant and Anderson) executed and delivered to plaintiff, on the 8th day of April, 1920, although the instrument was dated March 30, 1920, the contract of guaranty upon which this action is predicated. The said guaranty provides as follows:

" 'In consideration of General Motors Acceptance Corporation, hereinafter called the "Corporation," hereinafter extending credit at any time and to any extent to Modesto Motor Co., hereinafter called the "Dealer," or to any one at the request or for the benefit of said Dealer, through issuing, drawing, accepting, endorsing, discounting, purchasing or acquiring any draft, note, acceptance, bill of exchange, letter of credit, or other instrument or obligation, for the account or the behalf of said Dealer, or hereafter refraining to any extent from enforcing any rights under any contract or arrangement entered into by said Dealer, and of other good and valuable consideration, the undersigned agrees to hold the Corporation harmless from, and does hereby unconditionally at all times guarantee the performance and payment at maturity of each and all drafts, notes, acceptances, bills of exchange, letters of credit, negotiable instruments and agreements and other obligations between the Dealer and the Corporation, heretofore or hereafter issued, drawn, accepted, executed, entered into, endorsed, discounted, purchased or acquired by the Corporation, for the account or in the behalf of said Dealer, including all costs, expenses and attorney's fees, heretofore or hereafter incurred by

said Corporation, in connection with the default of said Dealer.

" 'This is a contract of continuing guaranty and, until canceled as hereinafter provided, shall not be limited to any amount, and shall at all times include the full indebtedness of the said Dealer to the said Corporation.

" 'The liability of the undersigned for any unpaid balance shall not be affected by any indulgence, compromise, settlement, extension of credit, or variation of terms, effected by or with the Dealer or any other person interested, nor by the amount of Dealer's obligations outstanding at any one time, nor by payments previously made by the Dealer or the undersigned, nor shall it be necessary for the Corporation to procure the consent of the undersigned or give any notice in reference thereto.

" 'The undersigned hereby does expressly waive and dispense with notice of acceptance of this guaranty, notices of nonpayment and nonperformance, notices of amount of indebtedness outstanding at any time, protests, demands and prosecutions of collection, foreclosure and possessory remedies.

" 'This guaranty is to remain in full force and effect until written notices of the withdrawal of the same has been served by the undersigned upon the Corporation at its principal office at New York City, provided that such withdrawal shall in no case be effective except as to new transactions subsequent to the actual receipt of such notice.

" 'The obligation of all parties signing this guaranty, where more than one, shall be joint and several.

" 'The benefits and obligations hereof shall extend to and bind the heirs, administrators, successors and assigns of the respective parties hereto.

" 'This guaranty and the performance thereunder shall be construed and determined according to the law of the State of New York.'

"Gandy testified that the partnership held the agency in Modesto and adjacent territory of the Oakland, the Davis, the Paige and the Haynes cars; that the General Motors Corporation, as seen, manufacturer of the Oakland cars, finally objected to the partnership 'handling so many other makes of cars,' and it was hence decided by the partnership, or Gandy and Anderson, the sole members thereof, to organize a corporation and to transfer to such corporation the agencies

in Modesto of the Oakland and Davis automobiles; that in pursuance of this decision a corporation was by said parties formed on the 11th day of June, 1920—approximately two months after the above contract of guaranty was executed—under the name of Modesto Motor Company. The articles of incorporation were filed in the office of the county clerk of Stanislaus county on the 21st day of June, 1920. A short time after the organization of said corporation, so defendant continued to testify, the partnership transferred to the corporation the agencies for the Oakland and Davis cars and certain personal assets of the former to said corporation, consisting of 'certain personal property and some automobiles.' As a consideration for such transfer the stock of the corporation was issued to the copartners in the partnership, Gandy, the defendant, receiving, approximately, two-thirds of the stock, Anderson one-third, and one Bryan Milton one share thereof. Defendant testified that immediately upon the organization of the corporation he became president and his copartner in the said partnership, Anderson, became vice-president thereof. The Modesto Motor Co., partnership, and the Modesto Motor Co., corporation, occupied the same premises—that is, there were two buildings, Gandy testified, on one lot, but connected together, the entire premises being in the possession and under the control of the partnership, the front building, however, occupied by the corporation and the rear by the partnership. Both the Modesto Motor Co., a partnership, and the Modesto Motor Co., a corporation, were doing business on the same premises at the same time.

"The defendant, having been called by the plaintiff as a witness under section 2055 of the Code of Civil Procedure, a number of times stated that he severed his connection with the corporation some time in the fall of the year 1921. When testifying as a witness for himself, however, he stated that it was some time in the fall of 1920 that he severed his connection with said corporation by selling his stock therein to one Knorr, who became president thereof, and another party whose name he was unable to recall. The Modesto Motor Company, partnership, continued to carry on business in the same premises that were occupied by the corporation of the same name until the month of January, 1921, when the Gandy Motor Co., a corporation organized

by defendant, took over the business of the Modesto Motor Co., partnership.

"Gandy, further testifying, stated that in the month of October, 1920, after the corporation was formed and he had sold and relinquished all interest he had in the said corporation, he and the Mr. Knorr spoken of above as the party succeeding to the presidency of the corporation, called on the manager of plaintiff in San Francisco, and that he, in the presence of Knorr, informed said manager that he (defendant) had disposed of his interest in the agency of the Oakland car; that Mr. Knorr was the president of the Modesto Motor Company, Inc., and that Knorr or said corporation would handle the Oakland cars from that time on in Modesto; that his partner, Anderson, would remain with the corporation, while he would control the Modesto Motor Co., partnership, until he discontinued the same, as he then contemplated, and turn over its business and the Paige and Haynes agencies in Modesto to a corporation he intended to organize under the name of Gandy Motor Company. Defendant stated that the plaintiff's manager asked him why 'we called it (the corporation) the "Modesto Motor Company, Incorporated," under the same name as our Company. I told him because we were going to discontinue the Modesto Company, a co-partnership, and that I was going into the Gandy Motor Company and that the agencies for the Paige and the Haynes would be turned over to the Gandy Motor Company and that Mr. Anderson was going to continue with the Modesto Motor Co., Incorporated, but I was leaving it altogether.' Defendant further testified that on the same occasion he asked plaintiff's manager 'to check up the contracts that were outstanding, and I told him I would personally see that the terms were carried out, but wouldn't go any further because I had nothing to do with the company'; that the manager gave him a statement of the status 'of the contracts that were outstanding, and I checked up my books and I followed each contract out to see that it was taken care of—that is,' he continued, 'I had the books and in a good many cases I collected the money and sent it in to the General Motors Acceptance Corporation. . . . The contracts that have been offered in evidence here (those upon which this action is founded), numbered "Exhibits 2 to 8," inclusive, were not in existence at that time.'

"Certain letters passing between plaintiff and the Modesto Motor Co., Inc., after the corporation was formed—those from the latter being signed by Knorr as president of said corporation—were introduced in evidence. The letters to plaintiff from the corporation were upon sheets of paper containing the following at the top thereof: 'Modesto Motor Co., Inc., 1204 Ninth Street, Modesto, California.' One of the letters from the plaintiff to the corporation, dated October 10, 1921, called for a guaranty covering contracts which might hereafter be taken over by plaintiff, and in said letter it was suggested that the guarantee, the form of which was enclosed with the letter, be executed by 'all the officers of the corporation.' The guaranty thus requested was executed by the officers of the corporation on the 4th day of November, 1921, and was forwarded to plaintiff with a letter from the corporation, dated November 7, 1921. Under date of October 9, 1920, the corporation addressed and mailed to the plaintiff the following letter or card:

"'GMAC Form No. 517.

"'Name Modesto Motor Co., Inc.

"'Address 1204 9th St., Modesto.

"'Dated Oct. 9, 1920.

"'To General Motors Acceptance Corporation:

"'Below find signature of those authorized until further notice to execute and/or endorse, in behalf of the undersigned, notes, acceptances, contracts and all other instruments or assignments thereof used in connection with your wholesale and retail financing plans. In the absence of special instructions signature of any one individual may be accepted.

"'A. S. HINCKLEY, President.

"'E. L. CALLANDER, Vice Pres.

"'Secretary.

"'Treasurer.

"'Yours truly,

"'Name—MODESTO MOTOR CO., INC.

"'By A. S. HINCKLEY, President.'

"The defendant's testimony that the contracts for the sale of automobiles which plaintiff took over, and which are the bases of this action, were made by and between the Modesto Motor Company, Inc., and the purchasers, is not

contradicted. In fact, the contracts themselves show this to be true. One of these contracts was dated and, therefore, presumptively executed, on the 11th day of December, 1921, seven days after the guaranty last hereinabove spoken of was executed.

"The complaint, after setting out *in haec verba* the contract of guaranty of April 8, 1920, alleges that 'plaintiff on the faith of said guaranty extended credit to the said Modesto Motor Company, a corporation, the principal named in said guaranty, by accepting, purchasing and acquiring certain notes, acceptances and conditional sales contracts, which said instruments were duly set over by the said Modesto Motor Company, a corporation, to the plaintiff herein, for a valuable consideration, and were purchased and acquired by the said plaintiff in the regular course of business with the said Modesto Motor Company, a corporation, and endorsed by said Modesto Motor Company, a corporation, through and by its duly authorized officers,' etc.; that the said notes, or the respective balances thereof, are now due and payable, but that the makers thereof, although demanded by plaintiff to do so, have 'wholly refused, neglected and omitted to pay the said balances,' etc.

"A demurrer, on both general and special grounds, was interposed by the defendant and the same overruled. Thereupon defendant filed an answer specifically denying the averments of the complaint, and also affirmatively declaring: That 'the contract of guaranty in said complaint set forth does not apply to or include or cover any of the contracts or notes referred to in plaintiff's complaint'; that he (defendant) 'is not responsible for the payment of any of the items or outstanding balances referred to in the complaint or set out in "Exhibit A of said complaint," ' which exhibit involves a bill of particulars setting forth in detail the balances respectively due on the promissory notes referred to in the complaint.

"The court found the existence of the partnership between Gandy and Anderson under the name of the 'Modesto Motor Company' during the period above mentioned, the organization of the corporation by the same parties under the same name, and that the two entities were operated for the period of time above indicated at the same time and place, and then found as follows:

" 'That the defendant, C. W. Gandy, did not serve any notice upon said General Motors Acceptance Corporation of the existence of a corporation known as the Modesto Motor Company, Inc., or advise the said plaintiff, General Motors Acceptance Corporation, of any distinction between the Modesto Motor Company, a co-partnership, and the Modesto Motor Company, a corporation.

" 'That by reason of the premises, the said plaintiff, General Motors Acceptance Corporation, purchased certain notes, conditional sales contracts and evidences of indebtedness from the Modesto Motor Company, Inc., a corporation, relying upon and believing that in truth and in fact it was the same firm or entity and described as Modesto Motor Company as set forth in the said contract of guaranty executed by the defendant herein.

" 'That the said defendant, C. W. Gandy, by reason of permitting the Modesto Motor Company to operate under the same identical name both as a co-partnership and a corporation and at the same place of business, and interchanging the assets of the said co-partnership to the corporation, caused the plaintiff, General Motors Acceptance Corporation, to rely and believe that the said Modesto Motor Company, either as a partnership or as a corporation, was the same entity as described as Modesto Motor Company in the contract of guaranty executed by the defendant herein.

" 'That by reason of the foregoing acts on the part of the said defendant, C. W. Gandy, the court further finds that the contract of guaranty was intended to, and did, guaranty all obligations of the Modesto Motor Company, either as a co-partnership or as a corporation, and that the defendant, C. W. Gandy, is, by reason of the premises, estopped to deny the obligations incurred under the said contract of guaranty by the Modesto Motor Company, a corporation.

" 'That the said contract of guaranty provided that the same should be in full force and effect until revoked in writing to the office of the said plaintiff, General Motors Acceptance Corporation, in the City of New York, State of New York.

" 'That the said contract of guaranty was not revoked within the terms and in accordance with the conditions of the said contract, but was in full force and effect at all times herein mentioned.'

"The theory upon which the plaintiff tried its case below and presents it on this appeal embrace several hypotheses, and may be stated as follows: 1. That the organization of the Modesto Motor Company, a corporation, was not effectuated for the purpose of dissolving or terminating the partnership, but that the corporation was formed by the parties constituting the partnership as a mere agency for the purpose of the more conveniently carrying on the partnership business, and that, therefore, the acts of the corporation within the scope of the partnership purposes and business were those of the partnership (see 6 Cal. Jur., sec. 201, p. 338, for a statement and an application of the rule by which the proposition stated is supported); 2. That defendant is estopped from denying his liability upon the contract of guaranty sued on for the reason that, assuming that said contract was in any way affected or impaired by reason of the formation of the corporation, his conduct and acts with reference to the organization of said corporation were such as to have had the effect of misleading plaintiff, or, rather, leading it to the belief that the Modesto Motor Company was, at all times during the subsistence of the contract of guaranty, a single entity, as to the legal form or status of which the plaintiff had no knowledge until the month of November, 1921, when, for the first time, plaintiff received information that a corporation under said name had been organized independently of the partnership existing and conducted under the same name; 3. That, assuming that the corporation was formed for the purpose only of acting as trustee or agent for the partnership in carrying on of the latter's business transactions, the defendant was bound and would remain bound to the terms of his guarantyship until he revoked the contract of guaranty in the mode prescribed thereby, to-wit: By serving upon the plaintiff, at its principal office at New York city, his withdrawal from said guaranty.

"The general contention of the defendant that the findings vital to the legal integrity of the judgment derive no support in the evidence necessarily involves an attack upon the position of the plaintiff, as above specifically pointed out, since, as will be noted, the theory of the findings is in accord with the theory upon which the plaintiff evidently presented its case below and presents it on this appeal.

"Although, as we have above pointed out, several different propositions are advanced here in support of the appeal, still the real problem the solution of which is decisive of the case is reducible to the simple question whether, as the court found, the defendant, upon the facts and circumstances characterizing the transactions culminating in this controversy, must be held to be estopped from claiming immunity from the obligations of the contract of guaranty pleaded in the complaint. In other words, the plaintiff's case, as we view the record, can only be sustained upon the theory that the circumstances attending the formation of the corporation—the part taken by defendant therein, his interest in both the corporation and the partnership, the fact that both the partnership and the corporation bore, substantially, the same name, and the asserted concealment from the plaintiff by him of the fact that the partnership and the corporation represented two separate and independent entities—were such as legally to foreclose in him the right to deny his liability upon the contract of guaranty, regardless of whether the promissory notes discounted and acquired by plaintiff were executed and delivered to the partnership or to the corporation. The plaintiff did not plead an estoppel. Its case, as made by its pleading, rests entirely upon the contract of guaranty. And thus 'it had the right to proceed. It was not required to anticipate any defense that might be pleaded or relied upon by the defendant. Under our system of pleading, unlike that of the common-law system, whereby, if necessary, a series of pleadings by the respective parties were required and could be resorted to in order to accomplish a joinder of issue upon any particular or other matter, the law answers for the plaintiff any special defense set up in the answer by the defendant. Therefore, the plaintiff here was entitled to introduce or rely upon the proof of any fact or facts which would impeach any special defense which the defendant by his answer has interposed, and this either by evidence directly contradicting the facts constituting such defense or by evidence of facts which, assuming the existence or truth of the facts upon which the special defense is predicated, will tend to avoid the legal effect thereof. Hence, the plaintiff here was at liberty to prove, if it could, an estoppel as against the defendant upon his plea that the contract

of guaranty has no application to the contracts and the notes giving rise to the present litigation and that, consequently, as a guarantor on said guaranty, he was not legally 'responsible' for the defaults of the makers of said notes in the payment thereof.   [1]   The important question, then, is: Does the evidence warrant the finding that the defendant is estopped by reason of his conduct with respect to the several transactions involved herein from denying his liability upon the contract of guaranty?   [2]   (1) The existence of an estoppel is a question of fact, and the settled rule as to the proof of equitable estoppel is that the burden rests upon the party asserting such estoppel to prove all the elements constituting it 'by evidence having some reasonable tendency to establish the fact.'   (10 Cal. Jur., p. 656, sec. 31; see, also, cases cited in the footnotes to said section.)   The plaintiff, it appears clear to our minds, failed to sustain this burden.   In the first place, it is to be noted that the evidence, without conflict, shows that the Modesto Motor Company, a partnership, and the Modesto Motor Company, a corporation, were two separate and independent entities, the partnership, from and after the formation of the corporation, being the agent for and dealing in certain kinds of automobiles, and the corporation the agent for and dealing in other kinds of automobiles. It is also undisputed and, indeed, indisputable, that the guaranty declared upon by plaintiff was executed and in operative effect some two months before the corporation was formed.   In the second place, it is to be observed that, save and except the testimony of Wm. Robb, the assistant credit manager of plaintiff, and the only witness introduced by the latter, that he did not know, when the contracts and the notes directly concerned herein were taken over by the plaintiff, that the Modesto Motor Company was incorporated, the plaintiff made no affirmative showing in support of an estoppel, nor did it make any attempt to do so.   Aside from said testimony of Robb, it relied entirely for the support of an estoppel upon facts brought out upon the examination of defendant under section 2055 of the Code of Civil Procedure and on his cross-examination, the fact that the partnership and the corporation bore the same name, and the asserted fact that it was not informed by defendant or any other person connected either with the corporation or the partnership or any other party to the contract of guaranty, prior

to its acquisition of the contracts and the notes involved herein, that the corporation had been formed and that the automobile agencies with which said contracts and notes were alone concerned had been transferred to said corporation. This, as stated, embraces the entire foundation for the claim and the support of the estoppel. The testimony of defendant on his examination by plaintiff under section 2055 of the Code of Civil Procedure was substantially the same as that given by him when he testified as his own witness or in his own behalf, both upon direct and cross-examination. Attention, however, may here be called to the testimony of the defendant that, within a brief time after the formation of the corporation and the transfer to the latter by the partnership of the agencies of the Oakland and Davis automobiles, and prior to the time at which, respectively, the contracts and the notes involved herein were acquired by plaintiff, he called at the offices of the plaintiff, and, in the presence of Knorr, informed its manager (a Mr. Warner, he believed to be the name of the manager) that the corporation had been formed, that the Oakland and Davis agencies had been transferred by the partnership to said corporation, and that he had severed his connection with the latter concern; that said manager stated to him (defendant) that the notice thus given was sufficient and that it was not necessary for him to transmit to and file with the main office of the plaintiff in New York city the written notice required by the contract of guaranty where the guarantors desire to withdraw therefrom as such guarantors. As before stated, this testimony of the defendant was not directly contradicted. Neither plaintiff's manager at San Francisco nor any other official of the plaintiff was called by the latter to give testimony in rebuttal of the defendant's testimony, if, indeed, any such adversary showing could have been made by the plaintiff. Nor was any explanation vouchsafed for the failure of plaintiff to call the said manager as a witness. But it may be conceded that the court as the trier of the issues of fact, in the exercise of a sound legal discretion, hedged by those tests which constitute the criterion by which the credibility of a witness may be determined and, therefore, the weight and the probative value of his testimony may be determined and appraised by the jury or the court by which the questions of fact are tried, was legally at liberty to disbelieve and

so disregard the defendant's testimony. In support of the finding as to an estoppel, such would be the presumption. But, this being so, or at least assumed, it follows that there is no testimony remaining in the record as to the knowledge of the plaintiff of the fact of the formation of the Modesto Motor Company, a corporation, prior to the acceptance by the former of the contracts and the notes involved herein other than the documentary evidence consisting of the contracts themselves and the letters passing between plaintiff and the Modesto Motor Company, a corporation, after the latter was formed, and the testimony of Robb to the effect that he did not know of the existence of the Modesto Motor Company as a corporation. The letters from the plaintiff to the Modesto Motor Company, a corporation, after the acquisition by the former of the contracts and the notes themselves show beyond all question that plaintiff then had full knowledge of the fact that the Modesto Motor Company with which it was dealing as to said contracts and notes was a corporation. And, in this connection, it is important to note that there is absolutely no testimony in this record that the plaintiff did not know, at the time the contract of guaranty was executed and delivered to it, that the Modesto Motor Company with which it was then dealing was a partnership. But further consideration of the evidence need not be pursued, since the problem presently before us is not one whose solution is to be controlled so much by a consideration of the rule as to evidentiary conflicts as upon a consideration of the question whether the estoppel claimed is the necessary effect of the facts and circumstances from which it must have arisen, if at all. [3] Among the dominant essentials of equitable estoppel or estoppel *in pais* is that there must have been a false representation or a concealment of material facts of the matter as to which the estoppel is claimed, and the party to whom such representation is made or from whom such facts are concealed must have been ignorant, actual and permissibly, of the truth of the matter. [4] As a rule, manifestly, an equitable estoppel must be proved by oral testimony, hence the rule that certainty is essential to all estoppels is peculiarly applicable to estoppels *in pais*. The estoppel must be so established as to leave nothing to surmise or questionable inference. In other words, the repre-

sentation, whether express, or implied from the conduct of the party against whom the estoppel is sought to be invoked, must be such as to justify a prudent man in acting upon it, and must be plain and not doubtful. (Bigelow on Estoppel, 5th ed., pp. 570-578, incl.) Clearly, the estoppel claimed here does not measure up to the requirements of the above rules relating to the establishment of equitable estoppel. The testimony of Robb that he did not know at the time material here that the Modesto Motor Company, Incorporated, was in existence and the entity with which plaintiff was dealing with respect to the contracts and the notes in question is contradicted by the documentary evidence, and, indeed, by the plaintiff's own pleading. Assuming, though, that personally he had no knowledge of that fact, certainly it cannot be denied that he and other officers of the plaintiff were familiar with facts and circumstances sufficient to put them on notice as to the existence of two separate entities under the name of the Modesto Motor Company, and that the plaintiff in the transactions involved here was dealing with the corporation of that name.

"It is hardly necessary to suggest that the contract of guaranty had no relation to or connection with the Modesto Motor Company, Incorporated. That instrument applies solely to the partnership of that name, and, therefore, the requirement of said contract that a withdrawal therefrom by one or all of the guarantors could be effected only by a written notice filed in the New York office of plaintiff to that effect has no bearing upon any transactions had with the Modesto Motor Company, Incorporated."

[5] After the foregoing opinion was filed by the said district court of appeal respondent petitioned for a rehearing of said cause, which petition was by said court denied and an opinion filed in response to said petition, in which it was pointed out that the contracts purchased by the plaintiff from the Modesto Motor Company, Inc., which are the basis of defendant's alleged liability, showed upon their face that they were between purchasers of automobiles and Modesto Motor Company, Inc., and not the partnership of that name.

The only question raised by respondent's petition for a hearing by this court which has not been answered by the foregoing opinions of the district court of appeal is predi-

cated upon the language of the guaranty, as follows: "The benefits and obligations hereof shall extend to and bind the heirs, administrators, successors and assigns of the respective parties hereto."

It is contended that under this provision the defendant was bound to guaranty the obligations of the corporation as the successor or assign of the partnership. The contention seems worthy of but brief consideration. First, according to the record, the corporation was not the successor or assign of the partnership. Both entities existed at the same time and conducted different business operations. Second, the parties to the contract of guaranty were the plaintiff and the defendant, and not the Modesto Motor Company. The record, therefore, presents no question involving the heirs, administrators, successors, or assigns of the respective parties to the contract of guaranty.

The judgment is reversed.                                ₤

Richards, J., Seawell, J., Preston, J., Shenk, J., Waste, C. J., and Curtis, J., concurred.