[No. D002053. Fourth Dist., Div. One. Jan. 22, 1986.]

SAN DIEGO MUNICIPAL CREDIT UNION, Plaintiff and Appellant, v. MARTIN A. SMITH, Defendant and Respondent.

COUNSEL

Saxon, Alt, Brewer & Kincannon, Alan J. Amico and Mark A. Saxon for Plaintiff and Appellant.

Weeks, Willis, Rathbone & Johnson and Gregory L. Weeks for Defendant and Respondent.

OPINION

**LEWIS, J.**—San Diego Municipal Credit Union (Credit Union) appeals a judgment in favor of Martin A. Smith based on equitable estoppel. We affirm.

## I

Smith bought a Porsche automobile in September 1979. He borrowed $20,000 from Credit Union for that purpose and, on September 7, 1979, signed a promissory note and a security agreement in favor of Credit Union.

In November 1979, Smith proposed to sell the Porsche to Daniel Steele. Smith took Steele to Credit Union's office on November 21, 1979, for the purpose of having the note paid off and transferring title of the Porsche to Steele. An employee of Credit Union determined the balance due on the note was $19,971.41. Steele gave the employee a check payable to Credit Union for that amount, and the Credit Union employee asked Smith to sign the title documents for the Porsche over to Steele, and other documents, and Smith did so. Smith assumed the Credit Union employee verified the check was good. Smith was given a copy of the promissory note and a copy of the security agreement, both stamped "Paid 11/21/79," and initialed by the employee. Having signed over the title documents, Smith turned the Porsche over to Steele. Steele shortly thereafter sold the Porsche to a third party. Steele's check was returned to the Credit Union marked "not sufficient funds" on December 7, 1979. Steele made five payments of $421.46, the amount of the monthly payment on Smith's note, and then paid no more.

The Credit Union declared the entire unpaid balance immediately due and payable under the terms of Smith's promissory note. Smith could not pay, and on September 26, 1980, Credit Union presented to him an "extension agreement" to pay interest only, which he signed.

On June 22, 1983, Credit Union filed a complaint for damages for default on promissory note and for money lent. Smith answered, alleging affirmative defenses of negligence and equitable estoppel of Credit Union to deny its representation to Smith that his note and loan were paid in full upon which Smith relied by delivering to Steele both title and possession of the Porsche.

The case came to trial on the short cause calendar on Friday, April 6, 1984, before the court without a jury. The court found in favor of Smith on the ground of equitable estoppel.

## II

Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any

litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623; see *Wood* v. *Blaney* (1895) 107 Cal. 291 [40 P. 428].) The doctrine is defensive in nature only, and "operates to prevent one [party] from taking an unfair advantage of another." (*Peskin* v. *Phinney* (1960) 182 Cal.App.2d 632, 636 [6 Cal.Rptr. 389].) Whether there is an estoppel is chiefly a question of fact. (*General Motors Accept. Corp.* v. *Gandy* (1927) 200 Cal. 284, 295 [253 P. 137].) ■ There must be (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts, (3) to a party ignorant, actually and permissibly, of the truth, (4) with the intent, actual or virtual, that the latter act upon it, and (5) the party must have been induced to act upon it. (See, generally, 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351, 5352.)

The trial court summed it up succinctly in plain English: "There is no contradicting his testimony. They told him to sign off on the pink slip of ownership. He did. Gave it to them. They set him up, and that's it. They can go after the security. [¶] What she [the Credit Union manager] says they never did sign off, so they should have a security interest in the Porsche. I am not going to stick him with it when they told him to do it. He went there and did it. If anything, it's an equitable estoppel."

■ The Credit Union manager testified their practice was not to "verify" checks and not to release any documents until a check cleared. Whether the Credit Union released its security interest in Smith's Porsche is not clear from the record of this trial, and there are references to a defect in the original security interest, but this case does not turn on the question of the Credit Union's security interest. It does appear the "pink slip" signed by Smith was released to Steele.

The court obviously found the Credit Union represented to Smith by their words and conduct that if he followed their instructions, his debt to Credit Union was satisfied and he could transfer title and possession of his automobile and would owe the Credit Union nothing further. He did part with both title and possession of his automobile. Credit Union knew it would not consider his debt paid until the check cleared, but led him to believe otherwise, to his detriment. The trial court found Credit Union estopped to deny Smith's note was paid. That was an appropriate application of the doctrine of equitable estoppel.

### III

■ Credit Union argues the ruling it was estopped from enforcing the promissory note was erroneous because the extension agreement constituted

a new promise. Respondent points out the extension agreement was not pled or sued on, although it was introduced in evidence. Credit Union did not ask to amend the pleadings even at the conclusion of its case to base a claim on the extension agreement. However, the second cause of action stated in the complaint is for money lent, and the extension agreement would be supportive of that cause of action.

Civil Code section 1606 provides: "An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise."

This rule has been applied to a new promise to pay a debt discharged in bankruptcy (*General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844, 850 [118 Cal.Rptr. 913]), and to debts where collection is barred by the statute of limitations. The remedy to enforce the payment of debt is gone, but the moral obligation to pay it still remains and is good consideration for a new promise to make such a payment. (*Lambert* v. *Schmalz* (1897) 118 Cal. 33, 35 [50 P. 13]; *Davison* v. *Anderson* (1954) 125 Cal.App.2d Supp. 908, 910 [271 P.2d 233].)

■ Credit Union argues by analogy the same rule should apply to the extension agreement, supported by a moral obligation to pay a debt Credit Union is equitably estopped from claiming remains unpaid. Since we view equity as founded on fairness which we equate with morality, it seems axiomatic that an obligation a plaintiff is equitably estopped from asserting is different from one protected by the statute of limitations or a discharge in bankruptcy, and we so hold. An obligation which equity, because of Credit Union's conduct, estops Credit Union from asserting remains unsatisfied is not a moral obligation. This "extension agreement" was unsupported by any valid consideration.

## IV

Credit Union's argument the ruling on equitable estoppel was erroneous because there was no express agreement to accept the check as payment or any intentional cancellation of the note misses the point, as does the argument marking the note "paid" was not effective because Credit Union's actions were mistaken and unintentional. Both are valid propositions of law in other circumstances but have no application here.

■ The trial court's judgment on equitable estoppel was not based on any notion of express agreement to accept the check as payment, nor on

any contention Credit Union was bound because it marked the note "paid." The estoppel arose because Credit Union led Smith to believe they were accepting the check as payment of his debt and instructed him that he could safely part with title and possession of the automobile. There seems to be no question but what Steele owes Credit Union the amount of the check, and that as to Steele the check was conditional payment only, as Credit Union argues. (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 656 [190 Cal.Rptr. 355, 660 P.2d 813].) Likewise, the marking "paid" on the note apparently could have been corrected because of mistake, following *Gibraltar Sav. Ass'n* v. *Watson* (Tex.App. 1981) 624 S.W.2d 650, and *Banks* v. *Marshall* (1863) 23 Cal. 223, had not that been part of a transaction where Smith was induced to part with his automobile.

Judgment affirmed.

Work, Acting P. J., and Mitchell, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.