Filed 7/22/25  Heetebry v. Oakander CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IRENE HEETEBRY, as Trustee, etc. et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>LARRY M. OAKANDER et al.,<br><br>Defendants and Appellants. | F087107<br><br>(Super. Ct. No. 21CECG00475)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Gilmore Magness Janisse and David M. Gilmore for Defendants and Appellants.

Webb Law Group, Lenden F. Webb, and Chandler Gietzen for Plaintiffs and Respondents.

-ooOoo-

Appellants Patricia and Larry Oakander signed a note obligating them to pay $300,000 plus interest to Norman Miller.  The primary issue on appeal is whether Miller later substituted Theresa Castaldi as debtor on the $300,000 obligation "in place of" the Oakanders and with the "intent to release" the Oakanders.  (Civ. Code, § 1531.)  If so, a novation of the Oakander note was effected, and Miller is not entitled to recovery on the note.  (*Ibid.*)

The trial court, acting as finder-of-fact at a court trial, concluded that no novation occurred and granted relief to respondent Irene Heetebry who had previously been substituted in this litigation for Norman Miller.  Below we conclude the trial court's finding must be upheld under the applicable standard of review.

We observe the judgment must be amended to reflect eight payments the trial court found were made on the note, but otherwise reject appellants' remaining contentions.

## BACKGROUND

Plaintiff Norman Miller[1] sued Patricia and Larry Oakander, and First American Title Company, among others, in Mariposa County Superior Court in 2012.  He alleged that the Oakanders owed him $300,000 on a written note, and that First American Title Company negligently reconveyed property securing the note.

As to the "breach of note" cause of action against the Oakanders, the complaint prayed for relief of "damages in an amount to be proven at trial" plus interest of eight percent per annum.  As to the negligent reconveyance cause of action against First American Title Company, the complaint prayed for relief of "general damages according to proof" and "interest at the legal rate according to proof."  Miller settled with First American Title Company.

---

[1]     Respondent Irene Heetebry has taken the place of the now-deceased Miller in this litigation.

2.

The case against the Oakanders went to trial and Miller prevailed.  Subsequently, a new trial was ordered.  The Oakanders moved for summary judgment and prevailed.  In a nonpublished opinion, this court reversed the grant of summary judgment and remanded for further proceedings.  (*Heetebry v. Oakander* (Oct. 2, 2020, F077652) [nonpub. opn.].)

The parties stipulated to have the case transferred to Fresno County Superior Court.  In May 2022, the Oakanders again moved for summary judgment.  The motion was based on several arguments, including (1) that a novation occurred, and (2) that Miller was barred from collecting on the debt due to estoppel.  The court denied the Oakanders' motion for summary judgment.

The case then proceeded to a court trial.  The parties stipulated to the admission of several exhibits and excerpts of testimony from prior proceedings.  Only the portions of the prior trial specifically designated by the parties were admitted into evidence at the present trial.  The Oakanders relied solely upon such exhibits and prior testimony and offered no other evidence at trial.

**FACTS**

## I.    Overview

In his complaint, Miller alleged that a guest ranch business called Coyote Springs operated out of a property at 2100 Old Highway, Catheys Valley, California.  The partners in the business were Ken Baker, Theresa Castaldi, Patricia Oakander, Larry Oakander, and Alfonse Castaldi.

Miller testified at the prior trial that his friend Ken Baker asked him to invest $300,000 in the ranch.  Miller delivered a cashier's check for $300,000 to an escrow office in July 2004.  He understood the money to be going to appellants Patricia and Larry Oakander in order to fund operation of the ranch.  In exchange, the Oakanders signed a note dated July 8, 2004, obligating them to pay $300,000 plus interest to Miller.  The note was also signed at the escrow office.

Though the Oakanders were the only signatories to the note, payments on the note were initially made via checks written out by Theresa Castaldi and provided to Miller's bank. Eventually, payments stopped. Miller asked Baker where his money was, and Baker responded, "[I]t [is] kinda slow right now," and that they would catch up on payments later. Miller asked Baker instead of the Oakanders because Baker was the "main man." Miller considered Baker a friend.

Theresa Castaldi executed a note dated December 1, 2006, obligating her to pay $300,000 plus interest to Miller. Castaldi was required to make monthly payments of $2,000 from January 1, 2007, to December 1, 2009, at which time the entire remaining unpaid principal and accrued interest became due.

Miller believed that the Oakanders, rather than Castaldi, owed him the $300,000. Miller never gave anyone the Oakander note, which he kept in a file cabinet.

Miller signed a document dated July 9, 2008, entitled "Request for Full Reconveyance" under the "mail reconveyance to" section. He had not received payments on the $300,000 debt for at least a year. Miller understood the effect of his signature to be a request that repayment of the $300,000 obligation to be mailed to him. In fact, however, the text of the document indicated that the debt had already been repaid. The signature line after the document's substantive language was left blank, with Miller's signature only appearing in the section designated for identifying to whom the reconveyance was to be mailed.

The property was eventually lost to a bank foreclosure.

Below, we explore the evidence summarized above in greater detail.

## II.     Oakander Note and Deed of Trust.

The Oakander Note was admitted at trial. The Oakander Note, dated July 8, 2004, provided that the Oakanders "jointly and severally promise to pay Norman W. Miller, Trustee of the MILLER FAMILY TRUST OF 2004 … the principal sum of three hundred thousand dollars ($300,000), with interest." The Oakanders were required to

4.

pay interest-only installments from August 16, 2004, to July 16, 2007, at which point the remaining balance and accrued interest was due and payable in full. The interest rate was set at eight percent per annum.

The Oakander Note stated that it was secured by a deed of trust bearing the same date. The note further provided if the Oakanders sold, conveyed, or alienated the underlying property without Miller's written consent, then Miller could declare the debt immediately due and payable. The signatures of Larry Oakander and Patricia Oakander appear on the document.

A deed of trust bearing the same date of July 8, 2004, identified the Oakanders as trustors, First American Title company as trustee, and Norman W. Miller, Trustee of the MILLER FAMILY TRUST OF 2004 as the beneficiary. Like the note, the deed of trust provided that if the Oakanders sold, conveyed, or alienated the property without the written consent of Miller, then Miller could declare the debt due and payable. The signatures of Larry Oakander and Patricia Oakander appear on the document.

## III.    Testimony of Irene Heetebry.

Irene Heetebry testified that she met Miller after he moved to Coyote Springs Ranch (the "ranch"). Eventually, Heetebry and Miller became romantically involved. While the ranch was operational, Heetebry was there about once per week.

Miller did not tell Heetebry that he was "investing" money in Coyote Springs Ranch. Heetebry denied the money at issue was an investment.

Heetebry understood that Miller "trusted he would … receive his money back." Heetebry was aware that Miller had asked for payments, but she did not know who he had asked. Miller told Heetebry he wanted his money back, but did not say from whom.

However, Heetebry did remember that one day "everything was falling apart." She believed the Oakanders were present that day, and that Miller was asking where his money was. However, Heetebry was not present for the substantive discussion.

5.

## IV. Full Reconveyance.

The parties also stipulated to the admission of a document titled "Full Reconveyance." The document provided, in substantive part,

> "First American Title Company, as Trustee under that certain Deed of Trust dated July 8, 2004, executed by Theresa Castaldi as trustor[2]…, having been requested in writing, by holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to Trustee under said Deed of Trust, DOES HEREBY RECONVEY TO THE PERSON OR PERSONS LEGALLY ENTITLED THERETO, WITHOUT WARRANTY, ALL THE ESTATE, TITLE AND INTEREST acquired by Trustee under said Deed of Trust."

Immediately under this paragraph appears the date January 8, 2007, and the signature of an authorized signor of First American Title Company.

Another exhibit, entitled Request for Full Conveyance was also admitted at trial. The document's body reads:

> "The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same."

Immediately below and to the right of this paragraph is a signature line. No signature appears there. Below that signature line is the phrase "Mail Reconveyance to:" and another several lines. "Norman W. Miller" is handwritten on the line immediately under "Mail Reconveyance to:" Heetebry testified Miller claimed that "wasn't his signature."

---

**2**    It appears that this is an error and should have identified the Oakanders as the trustors of the July 8, 2004, deed of trust.

Below all of the signature lines is the following text: "Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made." A space provided to date the document is blank.

## V.     Testimony of Ken Baker.

Ken Baker testified that he met Miller around 1985, and they became friends.

Baker claimed Miller wanted to invest in the Coyote Springs ranch property, but "we" said no. Miller began working with Baker on the property. Miller would stay at the property at night and over weekends when he could. Over the years, Miller said he wanted to invest, but Miller's wife "wouldn't go along with it."

One night Miller called Baker and said his wife had passed away. Miller sold his house and said he wanted to invest the money in the ranch. Miller also said he would be moving to the ranch full time. Baker told him, "[N]o," because the Oakanders did not want Miller to invest.

Eventually, Baker convinced the Oakanders to allow Miller to invest. Baker testified that "we" took his money with the understanding it would be spent on the ranch. According to Baker, Miller's $300,000 went to Theresa Castaldi.

The Oakanders later told Baker they wanted "off" the property and reminded Baker they had asked not to bring Miller on. A few months later, in December 2006, title of the property was transferred from the Oakanders to the Castaldis.

Baker "sent" Miller to the title company to sign a reconveyance. According to Baker, Miller did not object and acted like he did not know the Oakanders were involved.[3]

---

**3**     In contrast, Miller testified at the first trial that he was not even aware of the transfer of the property to Castaldi until at least a year later.

Baker claimed he gave a $300,000 check to Miller, but that Miller did not cash the check. Baker said Miller did not want to be paid back and that he wanted his money "here" (presumably meaning the ranch).

Castaldi signed a note in December 2006 which, according to Baker, was intended to replace "the other note" because Miller did not want to be "paid off."[4] In fact, Miller insisted on not being paid. Baker claimed he had a conversation with Miller indicating the Castaldi note would replace the "other" (i.e., Oakander) note. Miller "very much wanted to be involved."

Castaldi made payments by check to Miller, which Baker saw personally. According to Baker, the Oakanders never made payments on the note. During an economic downturn, which Baker believed was in 2008 "or something like that," Castaldi said she was not going to be able to continue making payments to Miller.

Miller was the foreman of the ranch at the time of the financial crisis and remained so until he was evicted upon foreclosure of the property. Baker testified that Miller was listed as the ranch foreman on all documents, signed off on purchases for ranch equipment, and traveled with Baker.

## VI. Castaldi's Bankruptcy.

Theresa Castaldi filed for bankruptcy in 2009. Miller made a creditor's claim in Castaldi's bankruptcy for $500,000 plus interest. In support of his claim, Miller offered

---

**4** An installment note was admitted into evidence as exhibit 6 and 7 (the "Castaldi Note"). The note provided that Castaldi promised to pay "Norman Miller, an unmarried man" the principal sum of $300,000 with an interest rate of eight percent per annum. Castaldi was required to make monthly payments of $2,000 from January 1, 2007, to December 1, 2009, at which time the entire remaining unpaid principal and accrued interest became due. The note provided that if Castaldi sold, conveyed, or alienated the property without Miller's consent, then Miller could declare the indebtedness immediately due and payable. The note further indicated that it was secured by a deed of trust with First American Title Company.

the Castaldi Note (as well as another note for $150,000).[5]  The claim form instructs users to only fill out a particular section if all or part of the claim is secured.  Miller did not fill out that section.

## VII.    Patricia Oakander.

Patricia Oakander testified that her initial involvement in the ranch was that she had mentioned to Baker at one point to look for some property.  Oakander also invested $100,000 into the ranch, which she did not receive back.  She later paid for horse feed as well.

Oakander said she never spoke with Miller about him loaning her money.  However, she acknowledged that she signed the note.  Oakander believed she was "putting forth my credit and Theresa [Castaldi] was going to take over this note."  Yet Oakander later testified that the first she heard of the note was when she was sued.  Oakander claimed she never got any written demands for payment from Miller or his attorney.

---

[5]    The Oakander's assert on appeal:  "In filing his claim under penalty of perjury, Miller made no claim that the obligation was a joint obligation with the Oakanders or that the debt was covered by another note."  However, they do not explain why Miller was obligated to make such an assertion in Castaldi's bankruptcy.

The Oakanders also assert on appeal:  "That bankruptcy claim made clear that the only obligor on the note was Castaldi; in other words, by filing that claim, Miller admitted the novation and that his intent was to look to Castaldi not Oakanders."  These factual assertions are not accompanied by any citation to the record.  Our own review of Miller's bankruptcy claim in exhibit 38 yields no reason to conclude it "made clear that the only obligor on the note was Castaldi."

Additionally, we note that Castaldi and the Oakanders signed separate notes.  Consequently, Miller's omission of the Oakanders from the proof of claim in Castaldi's bankruptcy proceedings was likely a reflection that Castaldi was the sole signatory to the Castaldi Note.  Reading the document in the light most favorable to the judgment, we conclude it was not a binding judicial admission that the Oakanders were not also responsible for the underlying debt.

Oakander said she did not make any payments on the note. Instead, Castaldi made payments. Oakander knew that because Baker and Castaldi told her.

Oakander saw Miller at the bankruptcy court. Oakander said, "[T]his wasn't a very good investment because we all lost our money." Miller said "quite the contrary," and that it was the best investment he ever made. Miller did not mention anything about Oakander owing him money.

In December 2006, Oakander and her husband signed a quitclaim deed of the property. Oakander's husband worked for the California Bureau of Alcohol Beverage Control and his superiors said he could not be involved in the ranch. Oakander thought that signing the quitclaim deed meant she was "done and off the note."

## VIII. Check.

In June 2012, Miller found a check in his nightstand for $300,000. Miller had "no idea" who put it there. Baker and Castaldi had access to Miller's nightstand. Heetebry testified that Miller told her he was not aware of the check. The check was not honored by the bank. When he tried to cash it, "the bank that it was drawn on [had] closed, so it was a nonviable check." Baker testified in the prior trial that when the check was not cashed, the money that would have covered the check was spent on ranch operations.

Sometime in 2014 through 2016, Oakander heard from someone that Miller was going to be paid back his $300,000.

## DISCUSSION

## I.      The Evidence Did Not Establish Novation as a Matter of Law.

The Oakanders first contend that the court erred in failing to find that a novation occurred.

"Novation is the substitution of a new obligation for an existing one." (Civ. Code, § 1530.) For example, a novation occurs when a new debtor is substituted "in the place of the old one, with the intent to release the latter." (*Id*., at § 1531, ¶ 2.)

10.

The court determined, as the finder of fact in a court trial, that no novation occurred here. The court found that neither Oakander nor Castaldi discussed the purpose of the Castaldi note with Miller; that Miller was not informed of the transfer of the property to Castaldi; that Miller mistakenly believed the request for reconveyance would reconvey to him the money owed by the Oakanders; and that the request for reconveyance was improperly executed. It concluded,

> "The testimony of [Miller] demonstrates he never intended to release the Oakanders from their obligations under the Oakander Note. This alone is sufficient to defeat novation. While there were agreements amongst the defendants and partners to the venture regarding a novation, these conversations did not include [Miller]. [Miller's] receipt of the Castaldi Note is insufficient to establish a novation. [Miller's] acceptance of interest-only payments from Ms. Castaldi is insufficient to establish a novation absent an agreement expressly releasing the Oakanders and substituting Ms. Castaldi in their place. There is no evidence of such an agreement."

Heetebry suggests our standard for reviewing the trial court's determination is the substantial evidence test, while the Oakanders indicate there is "a basis for an independent review." Neither are correct.

The burden of proving a novation occurred is on the party asserting it – here, the Oakanders. (*Ehrenreich v. Shelton* (1963) 213 Cal.App.2d 376, 378.) Thus, the factual finding at trial that no novation occurred went against the party that bore the burden of proof. When the party bearing the burden of proof loses at trial, we do not ask whether substantial evidence supported the trial court's factual conclusion. Instead, we ask whether the losing party's evidence was so compelling that it required a finding in its favor as a matter of law. (See *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 163 (*Ajaxo*).) "Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Id.* at pp. 163–164.)

11.

The Oakanders fall far short of this significant burden. While they insist the relevant evidence is not in dispute, in fact there is a substantial evidentiary conflict as to whether *Miller* had the "intention" (Civ. Code, § 1531, ¶ 2) of relieving the Oakanders of their indebtedness. There was some evidence Miller signed the reconveyance because he mistakenly believed it would cause him to be repaid in full. The trial court credited this evidence, finding that Miller "had the mistaken belief that this document was to reconvey money owed to him by the Oakanders." Notably, Heetebry also testified that Miller said the signature on the document was not even his. Moreover, Miller's purported signature appears not on the operative signature line but instead in an area designated to identify mail recipients of the document. The trial court found the request for reconveyance was "incorrectly executed."

To be sure, appellants cite some evidence that would likely support a contrary inference. For example, Baker testified that the creation and signing of the Castaldi Note and the reconveyance were actually a result of Miller's insistence that he not be repaid on the Oakander note. The fact that the Oakander Note and Castaldi Note are for the same principal amount would be consistent with Castaldi intending to take over the Oakander's obligation to Miller. But the trial court clearly did not credit that version of events. All the Oakanders have shown is that this case is an "ordinary one posing evidentiary conflicts." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Such a showing will not suffice under the present standard of review, because "[i]t is not our function to retry the case." (*Ibid*.)

The several other factors cited by the Oakanders do not establish a novation. The Oakanders observe, for example, that there is no evidence they personally received the $300,000 (instead it went to the ranch); that Castaldi made the only payments on the note; that Miller did not discuss the note with the Oakanders; Oakander signed the note at the request of Baker; the Oakanders quitclaimed the collateral for the note to Castaldi for no consideration; Miller did not notify the Oakanders of the reconveyance; the Castaldi note

12.

and deed of trust was made without the advancement of any new funds; Miller did not request payment from the Oakanders; and Miller sought to recoup funds in Castaldi's bankruptcy. But none of these factors establish a novation, which would require that *Miller* have *intended* to release the Oakanders and establish a new debtor in their place. (See Civ. Code, § 1531, ¶ 2.)

At oral argument, appellants' counsel observed that the parties to these transactions were unsophisticated. Counsel argued the actions cited above reflect an unsophisticated attempt by Miller to release the Oakanders from their obligation and establish a new debtor (Castaldi) in their place. However, an alternative conclusion is that the documents and actions in this case are unsophisticated reflections of an understanding that *both* Castaldi and the Oakanders were liable for the same debt. Indeed, that is essentially what the trial court found, observing that Miller's "actions in seeking further payments from Castaldi is entirely consistent with the Oakanders' knowledge of the facts, leaving the Oakanders as a sort of guarantor on the loan." Because the state of the evidence does not preclude the trial court's conclusion, we will not disturb it on appeal.

As the trial court found, there was "no evidence" Miller expressly agreed to substitute in Castaldi and release the Oakanders. And even if the factors cited by appellants taken together could also support a contrary inference Miller had such an intention, that would not suffice on our present standard of review. It is not enough to show that a novation is one possibility raised by the evidence. Appellants needed to show it is the *only* possibility the evidence allows. (See *Ajaxo*, *supra*, 48 Cal.App.5th at pp. 163–164 [on appeal, party must show its evidence was " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" ' "].) None of these facts, considered apart or together, accomplish this.

13.

## II.    Estoppel Was Not Established as a Matter of Law.

The Oakanders next contend the court erred in finding Miller was not estopped from collecting on the debt.

"Whether there is an estoppel is chiefly a question of fact.  (*General Motors Accept. Corp. v. Gandy* (1927) 200 Cal. 284, 295.)  There must be (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts, (3) to a party ignorant, actually and permissibly, of the truth, (4) with the intent, actual or virtual, that the latter act upon it, and (5) the party must have been induced to act upon it. (See, generally, 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351, 5352.)"  (*San Diego Mun. Credit Union v. Smith* (1986) 176 Cal.App.3d 919, 923.)

The trial court found,

> "The Oakanders fail to meet their burden to establish estoppel.  The Oakanders contend that [Miller] and Castaldi conducted themselves in a way to suggest [Miller] agreed the obligor of the note was Castaldi and only Castaldi.  As laid out above, nothing in the Oakanders' evidence supports a finding that Plaintiff intended the Castaldi Note to replace the Oakander Note.

> "Further, the Oakanders fail to demonstrate that they were ignorant of the fact that the Oakander Note remained operative.  The Oakanders executed the Oakander Note and secured it with a Deed of Trust on their property.  The Oakanders admit they transferred their interest in the property.  The Oakanders admit they never once paid Plaintiff for the Oakander Note.  Based on the foregoing, Plaintiffs actions in seeking further payments from Castaldi is entirely consistent with the Oakanders' knowledge of the facts, leaving the Oakanders as a sort of guarantor on the loan.  The Oakanders divesting themselves of interest in the security of the note by transferring the property does not extinguish their obligations under the Oakander Note.

> "Finally, the original Oakander Note remains in the possession of Plaintiff and the Oakanders never pursued its surrender or destruction.  The evidence does not support that the Oakanders were ignorant of the fact that the Oakander Note remained operative."

14.

**A.** *Analysis.*

The Oakanders claim estoppel applies because they changed their position in reliance on Castaldi taking over the obligation when they deeded the underlying property to Castaldi. But the premise that Castaldi was "taking over" their obligation to Miller is a factual inference *contrary* to the judgment. We must indulge inferences in favor of the judgment where possible.

An inference favorable to the judgment is not that Castaldi took over the obligation, but that the obligation remained the responsibility of the Oakanders even though Castaldi may have been making payments on the Oakander Note. Oakander herself testified that she believed she was "putting forth my credit" while Castaldi would be responsible for payments. This raises a reasonable inference that, even though Castaldi made payments on the note and signed a note of her own, the Oakanders' "credit" remained at risk. In other words, that the Oakanders' remained obligated to repay the debt, even if Castaldi was also responsible.

In any event, we have already rejected challenges to the trial court's conclusion that no novation occurred here. The evidence did not compel a conclusion that Miller intended to substitute Castaldi as a debtor *in place of* the Oakanders. Without a novation, the Oakander Note remains operative. And it is not overridden by the Castaldi Note for two reasons. First, the Castaldi Note makes no mention of the obligation established by the Oakander Note. Second, even if it had, the Castaldi Note was only signed by Castaldi – not by Miller.[6] By itself, it is only evidence of Castaldi's intent, not Miller's.

In sum, the alleged action the Oakanders detrimentally relied upon (i.e., that Castaldi was "taking over" their obligation to Miller) has not been proven as a factual matter. Consequently, their claim of equitable estoppel predicated thereon fails.

---

[6] Nor does the reconveyance override the Oakander Note for reasons explained in the previous section of this opinion.

The Oakanders later list a host of other "actions" by Miller, including: signing the reconveyance, being aware of the Oakanders transferring the property to Castaldi, accepting payments from Castaldi, not sending notice to the Oakanders, and taking no action after being aware of the foreclosure of the property. The Oakanders insist that they would not have transferred the property to Castaldi if not for Miller's conduct. But these factors do not satisfy the requirements of equitable estoppel.

First, as to several of these factors, the Oakanders were not "ignorant, actually and permissibly, of the truth." (*San Diego Mun. Credit Union v. Smith*, *supra*, 176 Cal.App.3d at p. 923.) For example, Miller being aware the Oakanders transferred the property to Castaldi does not qualify because the Oakanders were obviously aware of the transfer. Additionally, Oakander testified that she knew Castaldi was making payments because Baker and Castaldi told her.

As for Miller being aware of the foreclosure and failing to take "action," the Oakanders cannot show this induced them to deed the property to Castaldi because the foreclosure happened well after the quitclaim deed was executed. (See *San Diego Mun. Credit Union v. Smith*, *supra*, 176 Cal.App.3d at p. 923 ["the party must have been induced to act upon it"].) A later occurring event cannot be the inducement to performing a preceding act.

Nor can the request for reconveyance provide a basis for estoppel. The trial court clearly credited Miller's claim that he believed his signature on the reconveyance document effected a demand for repayment from the Oakanders. We will not disturb the trial court's evaluation of the credibility of that claim. While Miller's belief was obviously wrong, it nonetheless vitiates any possibility the reconveyance can be used to establish equitable estoppel, which requires the alleged action/concealment be "made

16.

with knowledge, actual or virtual, of the facts."**7**  (*San Diego Mun. Credit Union v. Smith*, *supra*, 176 Cal.App.3d at p. 923.)

## III.   The Oakanders Were Not Entitled to Credit Under Code of Civil Procedure Section 877.

Finally, the Oakanders claim they are entitled to a $50,000 credit for the amount First American Title Company paid to Miller in settlement.  They argue that because Miller's settlement with First American Title Company was a "good faith settlement," they are entitled to a reduction in the claim against them under Code of Civil Procedure section 877, subdivision (a).  But that provision applies when one of several joint tortfeasors or co-obligors settles with the plaintiff.  (Code Civ. Proc., § 877 [statute applies to "one or more of a number of tortfeasors claimed to be liable for the *same tort*, or to one or more other *co-obligors* mutually subject to contribution rights" (italics added)].)  First American Title Company is not a co-obligor on the Oakander Note.  As the Oakanders themselves acknowledge, First American Title Company's settlement resolved allegations that it had "improperly recorded the reconveyance signed by Miller and failed to record the deed of trust for the note signed by Castaldi."  There is no evidence or allegation that First American Title Company was a co-obligor of the Oakanders' obligation to Miller.  Consequently, the statute and authorities cited are not applicable.

The complaint also reflects that the Oakanders and First American Title Company were being sued on separate obligations/duties.  The gravamen of Miller's allegations

---

**7**      The Oakanders briefly contend the court also erred in denying their summary judgment motion.  However, our resolution of the Oakanders' challenges to the trial judgment renders any alleged error harmless.  "As a general rule, the denial of summary judgment is harmless error after a full trial covering the same issues." (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1410.)  The Oakanders do not substantively differentiate their claims of error as between summary judgment proceedings and trial.  Consequently, because we affirm the trial court's judgment on those issues, any error on summary judgment would be harmless.

17.

against the Oakanders centered on their purported breach of the note they signed.  In contrast, the gravamen of Miller's allegations against First American Title Company was that it negligently reconveyed the underlying property.  The prayer for relief as to each of the causes of action simply referred to damages to be proven at trial.  Nothing in the prayer for relief indicates that Miller was only seeking a total of $300,000 from the defendants.

**IV.     The Judgment Should Reflect Interest-Only Payments Found by Trial Court.**

The trial court found that Castaldi did make eight interest-only payments of $2,000.  However, it does not appear that the judgment reflects these payments.  We will direct the trial court to modify the judgment to reflect the $2,000 payments that it found were made on the Oakander obligation.

## DISPOSITION

The trial court is directed to amend its judgment to reflect the eight $2,000 interest payments it found were made on the Oakander Note by Castaldi.  In all other respects, the judgment is affirmed.  Respondents shall recover costs on appeal.

LEVY, Acting P. J.

WE CONCUR:

FRANSON, J.

SNAUFFER, J.

18.