Filed 1/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JESSICA HERNANDEZ, | B312814 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 20STCV28700 |
| v. | |
| MERIDIAN MANAGEMENT SERVICES, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Melissa T. Daugherty and Kerri R. Lutfey for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian, Anthony Nguyen and Leo Livshits for Plaintiff and Respondent.

————————————

Jessica Hernandez signed an arbitration contract with an employer called Intelex Enterprises, LLC. While working for Intelex, Hernandez also worked for other firms (Other Firms). These Other Firms were legally separate from Intelex, but functionally related to it. The Other Firms did *not* contract for arbitration with Hernandez. After termination, Hernandez sued the Other Firms but not Intelex: Intelex has never been a party to this case. The Other Firms moved to compel arbitration based on Hernandez's agreement with Intelex. The trial court denied the Other Firms' motion to enforce a contract they had not signed.

The trial court was right. The Other Firms cannot equitably estop Hernandez because they do not show she is trying to profit from some unfair action. They have no proof of agency. And they are not third party beneficiaries of Intelex's contract. Consequently, we affirm.

## I

Intelex distributed medical supplies to skilled nursing facilities. It hired Hernandez as a customer service representative in 2015. As part of the hiring process, Hernandez signed an arbitration contract with Intelex. Hernandez worked for Intelex until her termination in 2020.

At the same time she worked for Intelex, Hernandez also worked for six other companies that shared a building with Intelex. These six firms were Meridian Management Services, LLC; Comfort Care Enterprises, LLC; Office Smart, LLC; Shredpro, LLC; JJMBR Foods, LLC; and Premier Medical Transport, Inc. These six are the Other Firms. Hernandez

2

alleged the Other Firms hired her in 2015 and wrongfully terminated her in 2020 after she returned from maternity leave.

Hernandez brought employment claims against the Other Firms, but her complaint avoided mention of Intelex. She alleged the Other Firms shared the same legal and physical address; the same human resources person; the same controller; the same payroll department; the same risk management and legal services; and the same centralized information technology.

Hernandez declared the Other Firms were "jointly owned and operated." Hernandez also knew the Other Firms "document on paper that they are located in different suites," but that "there is no real division of the employees assigned to work" for the Other Firms. "As a result, all employees work in the same building and share the same facilities, including tools, desks, supplies, resources, and the like." Just as she excluded Intelex from her complaint, Hernandez excluded Intelex from her declaration.

The Other Firms moved to compel joinder of Intelex as a necessary party. They submitted Hernandez's discovery admission that the events in her complaint occurred when she was employed by the Other Firms *and* by Intelex. The Other Firms also showed Intelex was the sole corporate name on Hernandez's pay checks. Hernandez opposed the motion. She argued Intelex and the Other Firms "are jointly owned and operated . . . ."

The trial court wrote:

"There is a certain amount of tactical maneuvering taking place here. . . . [¶] It is undisputed that all the [Other Firms], as

3

well as current non-party Intelex, share a single building out in the city of Brea. It is [Hernandez's] position in this case that all of these entities, Intelex included, are commonly-owned and are operated as a single organism with no meaningful division between them except on paper. She believes that employees are shared, records are shared, equipment is shared, and so on. She has therefore sued the [Other Firms] on a joint employer theory.

"[The Other Firms] naturally take the position that they are separate businesses and that [Hernandez] was only ever employed by Intelex. They believe that [Hernandez] has an arbitration agreement with Intelex and for that reason alone has left Intelex out of the lawsuit. At least one of the reasons that [the Other Firms] want Intelex in the case is so that they can make a motion to compel arbitration based on [Hernandez's] agreement with Intelex."

The Other Firms do not challenge the trial court's denial of their motion to join Intelex.

Following this loss, the Other Firms moved the trial court to compel arbitration, arguing they were entitled to enforce Hernandez's arbitration agreement with Intelex. Hernandez opposed this motion, noting she never contracted for arbitration with any Other Firm. The court denied this motion, and the Other Firms appealed.

II

The Other Firms give three faulty reasons why they should be able to enforce a contract they did not sign: equitable estoppel, agency, and third party beneficiary. The trial court denied the motion to compel arbitration. We affirm its treatment

4

of each doctrine.  Our review is independent.  (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547 (*Jarboe*).)

A

The trial court rightly rejected equitable estoppel as a basis for compelled arbitration.

Equitable estoppel is an old and versatile idea:  you cannot take advantage of your own wrong.  (*Turner v. Billagram* (1852) 2 Cal. 520, 522; cf. *Godeffroy v. Caldwell* (1852) 2 Cal. 489, 492 [one who knowingly and silently permits another to spend money upon land, under a mistaken impression that he has title, will not then be permitted to set up his right]; *Hostler v. Hays* (1853) 3 Cal. 302, 306–307 ["The sense of estoppel is, that a man, for the sake of good faith and fair dealing, ought to be estopped from saying that to be false which, by his means, has become accredited for truth, and by his representations has led others to act."].)

The side claiming estoppel must establish it.  (*General Motors Acceptance Corp. v. Gandy* (1927) 200 Cal. 284, 295.)  Its first order of business is to show the wrong:  to identify the supposed mistake or misconduct by the other side and why it would be unfair to allow it to exploit that mistake or misconduct. (Cf. Rest.1st Torts, § 894 ["Equitable Estoppel as a Defense"].)

The Other Firms fail in this venture.

The trial court observed, with its emphasis, that "[t]ypically the doctrine of equitable estoppel is applied where a signatory has sued *both* another signatory *and* certain non-signatories on identical claims. . . .  [¶] But what happens if the other party to the contract is *not* also a party to the case, and never was?

5

Neither side cites authority addressing those facts. This is an issue of first impression . . . ."

The trial court continued by noting " 'the linchpin of the estoppel doctrine is fairness.' . . . [The Other Firms] complain[] that it is unfair for [Hernandez] to tailor her complaint in such a way as to avoid arbitration. But it isn't, really. There is nothing wrong with either party wanting to appear in court, or in arbitration. And it isn't as though [Hernandez] is trying to have it both ways – to appear in court, she has completely given up her claims against Intelex. Parties make tactical 'bargains' like this all the time."

The force of this analysis has overpowered the Other Firms' ability to respond to it. In their opening brief to us, they claim equitable estoppel allows them to escape the usual requirement that you must be a party to a contract to enforce it. Yet the Other Firms' opening brief never explains why it would be fair to do so, or what unfairness they suffer from the trial court ruling. The Other Firms have ignored the core of the trial court ruling and the heart of this doctrine. They give us no basis for disturbing the trial court ruling here, and so their appeal on this issue is for naught. (Cf. *Jarboe*, *supra*, 53 Cal.App.5th at p. 555 [estoppel doctrine concerns fairness].)

B

Agency is theory number two for the Other Firms. They seek to enforce Intelex's contract as agents for Intelex. The Other Firms, however, never established agency.

Agency is a potential theory in this case because Hernandez contracted with Intelex to arbitrate her employment

6

disputes with its "agents."  Agreements like this are enforceable. (See *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418.)

The agency theory here, however, collides with the fact the Other Firms offered no evidence they had authority to act on behalf of Intelex.  As the court correctly observed, "[t]he extent of corporate relationships is a highly fact-intensive inquiry; the court cannot assume a joint employer relationship simply because the companies share officers and have offices next to one another."

The Other Firms' attack on this ruling misunderstands agency doctrine, so we go to the basics.

"An agent is one who represents another, called the principal, in dealings with third persons.  Such representation is called agency."  (Civ. Code, § 2295.)  "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." (Rest.3d Agency, § 1.01.)

"[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person.  The person represented has a right to control the actions of the agent. . . .  A relationship is not one of agency within the common-law definition unless the agent consents to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's

acts. . . . A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of the right varies." (Rest.3d Agency, § 1.01, com. c.)

"Under the common-law definition, agency is a consensual relationship. The definition requires that an agent-to-be and a principal-to-be consent to their association with each other." (Rest.3d Agency, § 1.01, com. d.) "An essential element of agency is the principal's right to control the agent's actions. Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms." (Rest.3d Agency, § 1.01, com. f.)

The Other Firms point to six places in the record they say show agency, but these materials do not measure up. The citation to Hernandez's complaint spotlights text that omits Intelex and cannot show agency. A different citation is to their attorney's declaration recounting irrelevant procedural history. Other citations refer to Hernandez's admission that she worked for both Intelex and the Other Firms. This admission does not establish agency, for I may work two jobs, but that does not suggest one boss is an agent for the other boss.

In another argument, the Other Firms note Hernandez complained to a state agency that Intelex misbehaved in ways identical to the allegations she leveled against the Other Firms, but this does not imply agency. Several employers may engage in identical misconduct, but that does not show one has authority to act for the others.

The Other Firms cite *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788, where the plaintiff alleged two companies were joint employers. Hernandez avoided this allegation, which distinguishes *Garcia v. Pexco*.

In sum, the Other Firms claim "the overwhelming evidence provided by [Hernandez] herself" establishes they were agents for Intelex, but the trial court accurately found this assertion had no basis. The agency theory fails.

C

The Other Firms were not third party beneficiaries of Hernandez's arbitration contract with Intelex. We sketch this doctrine.

Civil Code section 1559 states, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

The test is this: examine the express provisions of the contract at issue, as well as the relevant circumstances of the contract's formation, to determine not only (1) whether the third party would benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party would be consistent with the objectives of the contract and the reasonable expectations of the contracting parties. The proponent must satisfy all three elements for the third party action to proceed. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

The Other Firms stumble on step two.  Nothing shows Intelex and Hernandez sought to benefit the Other Firms.  They argue the agreement's reference to "agents" of Intelex shows they were beneficiaries.  This merely recapitulates their fruitless effort to establish agency.

## DISPOSITION

We affirm and award costs to Hernandez.


WILEY, J.


We concur:


STRATTON, P. J.


GRIMES, J.

10